**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**James F. LACKEY, Defendant-Appellee.**

**No. 17310.**

United States Court of Appeals
Seventh Circuit.

July 16, 1969.

Rehearing Denied Sept. 4, 1969.

Mitchell Rogovin, Asst. Atty. Gen., Joseph M. Howard, Vincent P. Russo, Richard B. Buhrman, Attys., Dept. of Justice, Washington, D. C., Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., for plaintiff-appellant.

Stephen A. Seall, James F. Thornburg, Edward J. Gray, South Bend, Ind., Keith Campbell, Idaville, Ind., for appellee.

Before FAIRCHILD and CUMMINGS, Circuit Judges, and CAMPBELL, District Judge.[1]

CUMMINGS, Circuit Judge.

Pursuant to 18 U.S.C. § 3731, the Government has appealed from an order to suppress evidence. The order was based on the failure of Special Agent Young of the Intelligence Division of the Internal Revenue Service to give defendant the multiple warnings delineated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,

1. Chief Judge Campbell of the Northern District of Illinois is sitting by designation.

16 L.Ed.2d 694, during the interrogation of defendant as part of a criminal investigation of his federal income tax returns.

In May 1968, defendant was indicted for willfully attempting to evade taxes in violation of Section 7201 of the Internal Revenue Code (26 U.S.C. § 7201). The indictment was in four Counts involving the taxable years 1961 through 1964. Shortly thereafter, he filed a motion for suppression of evidence of "any and all statements made by him, whether oral or in writing, to agents of the United States Internal Revenue Service" with respect to his income tax returns for those years. He asserted that such statements and documents were obtained from him in violation of his rights under the Fourth, Fifth and Sixth Amendments.

Based on defendant's supporting affidavit and on testimony adduced at the hearing on the motion to suppress, the district court found that in October 1964, Revenue Agent Bennett wrote defendant that his 1962 tax return would be audited. Later that month, defendant appeared at his accountant's office and furnished the Revenue Agent and a Mrs. Sharp of the Internal Revenue Service with books and records relating to his 1961, 1962 and 1963 income tax returns. At this meeting, neither the Revenue Agent nor Mrs. Sharp advised defendant of his constitutional rights.

On December 16, 1964, Revenue Agent Bennett referred this case to the IRS Intelligence Division, whose function is to determine whether or not criminal violations have occurred. On January 11, 1965, the Intelligence Division assigned Special Agent Young to the case.

On March 22, 1965, Special Agent Young and Revenue Agent Bennett called on defendant at his place of business. Young introduced himself as a Special Agent of the Intelligence Division.[2] Defendant asked Young why he was accompanying Bennett. According to defendant's testimony, Young then said "We are called in to help on these things", but Young testified that he said it was his job "to determine whether there had been any criminal activity involved." Young also testified that he told defendant that he did not know whether there was anything wrong, but that there appeared to be some discrepancy in defendant's returns for the years 1961, 1962 and 1963. At this meeting, defendant furnished Young and Bennett with certain oral and written information. Concededly, no warnings of his constitutional rights were then given defendant.

On May 21, Young and Bennett again called on defendant at his place of business, and Young asked defendant if he would be willing to provide "a question and answer statement on May 27 in a room at the post office in Monticello, Indiana." Young advised defendant that the information he would request would relate to defendant's "business, personal and financial history." In response, defendant stated that he would have to see if his accountant would also be available to appear, and Young replied that it was not necessary that the accountant be present because he would be interviewed at a later date. However, Young said that he told defendant that he could have his accountant or legal counsel present. On the other hand, defendant testified that he assumed he had to be present at the post office on May 27 and that Young never told him he could have legal counsel present.

Defendant appeared for the May 27 interview, which was held in an 18' x 20' room in the basement of the Monticello Post Office and was some three hours in duration. The district court found:

> "There were no windows except a few high ones near the ceiling on one wall and the only furniture was a long bare table and a few chairs. A tape recorder was on the table and it was used to

2. According to defendant's affidavit, he was unaware of the fact that a Special Agent has the responsibilities of making a criminal investigation.

record the interview which began by placing Mr. Lackey under oath."

At the start of the interview, Young told defendant that he had a right to refuse to answer questions or supply the information. At the interview, only defendant, Revenue Agent Bennett and Special Agent Young were present. The door was closed with the exception of one brief interruption when county agent Jonathan Emerson inadvertently opened it. Young testified that at this May 27 meeting he made no statement to defendant that he was being requested to appear for the purpose of determining whether the Government had a criminal case against him.

In November 1964, while the investigation was still civil, Internal Revenue Agent Bennett called on the State and Savings Bank of Monticello Indiana, to obtain certain information about defendant. On July 14, 1965, at the request of that institution, defendant executed a form giving the bank permission to display various records to Bennett.

Between October 1964 and November 1965, the Internal Revenue Service also obtained certain information from defendant's stockbroker, Hayden, Stone & Co.

When the May 27 interview was terminated, the Internal Revenue agents requested permission to inventory his two safe deposit boxes, and defendant thereafter opened them and turned over their contents to the agents. On the same date, defendant gave them a number of bank statements and canceled checks from an account entitled "Hoosier Policeman" which defendant had opened when he was commissioned to publish a magazine of that name.

Relying primarily on Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the district court concluded in an unreported memorandum opinion that the following matters should be suppressed: the transcript of the May 27, 1965 interview; the inventories of the two safe deposit boxes obtained on that date, and the bank statements and canceled checks from the "Hoosier Policeman" account, also obtained on that date. Because of the custodial nature of the May 27 interview, we agree that Miranda applies and that the suppression order should be affirmed.

■ First of all, Miranda does not require that a suspect be in actual custody before the prescribed warnings must be given. Miranda held that its multiple warnings have to be given to a person "deprived of his freedom of action in any significant way" (384 U.S. at p. 444, 86 S.Ct. at p. 1612). This feature of the Miranda case was pointedly emphasized in Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311, where the warnings were required prior to interrogating a suspect in his own bedroom. The opinion does not reveal whether Orozco was formally arrested or told he could not leave, although one of the interrogating officers stated that the suspect was not free to go.

■ The district judge held that this defendant's freedom of action was significantly curtailed during the interrogation of May 27, 1965. In part, he based his conclusion on the following objective findings: (1) defendant's being asked on May 21, 1965, for the first time, to report to Government premises at a particular time and place; (2) the physical character of the room; (3) the nature of the interrogation itself, including the tape recorder and the oath. He found that the physical surroundings were "starkly, formally interrogatory" and that defendant had not been told that he need not attend or that, if he did, it would be on a strictly voluntary basis. He also found that defendant was not told at the beginning of the meeting that he could leave at any time or stop answering questions at any time, or that the answers could be used against him. Unless clearly erroneous, these findings must be sustained. Campbell v. United States, 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501. On the basis of this record, we cannot say that the findings fail to satisfy this standard. They afford an adequate basis for the district court's conclusion that defendant's free-

dom of action was sufficiently restricted to entitle him to the *Miranda* warnings. In the absence of such warnings, the district court was forced to conclude that the defendant's statements of May 27 were not voluntary.

■ In affirming the district court's suppression order, we are simply following the rule of the *Miranda* and *Orozco* cases and of Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed 2d 381. Even though these interrogations took place before the *Miranda* opinion, that decision applies to all cases tried thereafter (Johnson v. New Jersey, 384 U.S. 719, 734, 86 S.Ct. 1772, 16 L.Ed. 2d 882) and requires that the answers proffered by defendant at the May 27th interview be suppressed.

Our conclusion is based solely on objective factors, so that in this respect there is no departure from United States v. Spomar, 339 F.2d 941 (7th Cir. 1965), certiorari denied, 380 U.S. 975, 85 S.Ct. 1336, 14 L.Ed.2d 270, a pre-*Miranda* case. In United States v. Mansfield, 381 F.2d 961 (7th Cir. 1967), certiorari denied 389 U.S. 1015, 88 S.Ct. 593, 19 L.Ed.2d 661, the other case from this Court on which the Government especially relies, "full warnings" had been given to the taxpayer (381 F.2d at p. 963).[3]

The judgment is affirmed.

FAIRCHILD, Circuit Judge (dissenting).

With all respect, I am unable to agree that *Miranda*,[1] *Mathis*,[2] and *Orozco*[3] support the decision herein. Mr. Lackey was surely not in custody at the interview. In my view the findings of the district court do not support the conclusion that he had been "deprived of his freedom of action in any significant way."

---

3. Other contentions raised by the parties have been considered and are not deemed meritorious.

1. Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

2. Mathis v. United States (1968), 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381.

3. Orozco v. Texas, (1969), 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311.