UNITED STATES of America, Plaintiff-Appellee,

v.

James CAMPIONE, Defendant-Appellant.

No. 17177.

United States Court of Appeals Seventh Circuit.

Sept. 17, 1969.

Rehearing Denied Oct. 24, 1969.

Edward J. Calihan, Jr., Chicago, Ill., for appellant.

Thomas A. Foran, U.S.Atty., Chicago, Ill., John Peter Lulinski, Michael B. Nash, Richard A. Makarski, Joseph K. Luby, Asst.U.S.Attys., of counsel, for appellee.

Before KILEY and FAIRCHILD, Circuit Judges, and MORGAN, District Judge.*

KILEY, Circuit Judge.

Defendant was indicted on three counts of willful tax evasion [1] of personal income taxes for the years 1960, 1961 and 1962, and of two counts of willfully understating gross receipts of M. Campione & Son, Inc., on a Small Business Corporation Return of Income [2] for the years 1960 and 1962. The dis-trict court, without a jury, convicted defendant on all counts except for Count II charging personal tax evasion for the year 1961. Defendant has appealed. We affirm.

M. Campione & Son, Inc., mason contractors, was founded by defendant's father, who died in August, 1962. Defendant then took over complete operation of the business. He filed Small Business Corporation Return of Income forms,[3] as well as his personal tax returns for the years in suit. The amounts charged in the personal tax evasion counts are $5,500 for 1960, $644 for 1961, and $77,000 for 1962. The amounts allegedly understated in the small business returns are $16,150 for 1960 and $90,000 for 1962.

Beginning in 1960 the Campione firm was a subcontractor in the construction of the Sahara Motel, and purchased its materials from Edmier, a supplier of construction materials. The purchases were made in cash in order to gain discounts from the list price. Defendant's father devised several means of getting cash for the discount purchases: cashing customers' checks and not reporting them, obtaining cash from customers, or having customers' checks drawn to the order of Michael or James Campione instead of the firm, and using a bank account under a fictitious name.

In connection with IRS investigation into the affairs of the late Manny Skar and his Sahara Motel project, agent Berwick, one of the agents making inquiries into subcontractors for the motel, first met with defendant June 7, 1963. Berwick explained he was not examining defendant's tax returns. At the time he was also inquiring into affairs of subcontractors Sam Barlow and Enterprise Steel Erectors. On July 24, 1963, in the presence of his attorney, defendant told Berwick that Enterprise Erectors was a fictitious account, that he was Sam

* Judge Morgan is sitting by designation from the United States District Court for the Southern District of Illinois.

1. 26 U.S.C. § 7201.

2. 26 U.S.C. § 7206(1).

3. The 1961 return was signed by defendant's father.

Barlow and that these names were used to get cash to obtain discounts on purchases from Edmier. At subsequent meetings, with his attorney present, defendant made further incriminating statements. Records were then turned over to Berwick. And the attorney told Berwick if an investigation of defendant was begun Berwick should notify him as defendant's attorney. As a result of his examinations Berwick felt there were indications of fraud. On August 8, 1963, Berwick was assigned to a preliminary investigation on defendant.

In March of 1964 Berwick requested of defendant's attorney the records of M. Campione & Son, Inc. for inspection concerning defendant's tax liability. In June, 1964, Berwick wrote the attorney that a case had been opened on defendant and enclosed a subpoena for the Campione Company records. The indictment before us was filed in February, 1967.

After the parties rested at the trial, the district court denied defendant's motion to suppress as evidence the incriminating statements made in 1963 and the records turned over to Berwick, on the ground that defendant's attorney was with him when he made incriminating statements and turned over incriminating records. Defendant contends in this court that the district court ruling erroneously applied the standard of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Defendant argues that the basis of his motion was not the literal *Escobedo* rule but that he and an attorney were misled by Berwick's early statement that defendant was not under investigation. The government agrees with defendant that an agent may not mislead a tax-

payer under investigation in order to secure information. See Smith v. United States, 348 U.S. 147, 150–151, 75 S.Ct. 194, 99 L.Ed. 192 (1954).

It is defendant's theory that at the meetings in the summer of 1963 Berwick misled him and his attorney away from knowledge that his own tax liability was being investigated, thus tainting the incriminating material.[4]

He contends Berwick fraudulently induced the incriminating material by not advising him in the early meetings in June and July, 1963, when the fraud case investigation began, so that he could protect himself against self-incrimination. But the evidence favorable to the government is that before inspecting the Enterprise books after August 2 there was no fraud investigation of defendant under way.

The district court was not required to find that the incriminating statements and records were rendered involuntary and inadmissible. Defendant's theory presupposes that Berwick misled defendant as a matter of law. But the question whether defendant was misled was one of fact.

There is evidence favorable to the government that Berwick's receipt of the Enterprise records August 2, in the light of defendant's earlier admissions, indicated fraud to Berwick and resulted in the commencement of the fraud case; that it was not until March of 1964 that he next met with defendant and told him he was interested in defendant's tax liability; that after his earliest meeting with Berwick with respect to the Skar-Sahara affairs defendant obtained false exculpatory affidavits from Edmier employees and that he had his accountants prepare records for Enterprise; and that

---

4. Defendant makes clear that he does not rely upon Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), since he was not in custody. But this court in an able opinion, speaking prospectively, by Cummings, J., in United States v. Dickerson, 413 F.2d 1111, 7th Cir. July 28, 1969, holds that *Miranda* warnings must be given to the taxpayer by an IRS agent at the first contact after the investigation turns to a criminal investigation. See also United States v. Lackey, 413 F.2d 655, 7th Cir., July 16, 1969, also written by Cummings, J.; deciding that the *Miranda* rules do not require that the defendant have been "in actual custody" before the warnings must be given.

defendant's attorney, a former IRS attorney-accountant, asked to be notified if an investigation of defendant was begun.

Presumably the district court thought that this evidence showed, not the misleading of an innocent defendant, but rather his anticipation of and preparation for a criminal investigation. Furthermore, the district court presumably believed Berwick's testimony that after the investigation turned upon defendant in August, 1963, he did not again meet with defendant or attorney Harris until March of 1964 and he then told Harris he was interested in defendant's tax liability. This would overcome defendant's theory that before August, 1963, Berwick was covertly investigating defendant's tax liability and using a "subterfuge" to induce incriminating evidence.

■ We think that the district court was entitled to believe Berwick's testimony of events leading to March, 1964, and accordingly entitled to conclude from that testimony and defendant's activity soon after the first meeting in June, 1963, that Berwick did not by his conduct deprive defendant of his "freedom of action in any significant way." See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; United States v. Lackey, 413 F.2d 655. We hold there was no error in denying the motion to suppress.

Defendant contends the district court applied an erroneous standard of proof in finding him guilty. He argues that the court's disbelief of defendant's testimony of how much money was paid Edmier for materials is contrary to the evidence; that it ignored certain evidence and disregarded the mathematics of other evidence and accordingly failed to consider that if defendant paid Edmier more money than the government proved, there could be no unrecorded money chargeable as income to defendant.

He relies upon evidence that Edmier sued him for $122,000 for supplies delivered but for which it was not paid in 1961 and 1962; upon testimony of Edmier's collectors of the cash paid by defendant totaling from $104,000 to $122,000; and upon computations of delivery tickets. The sum of all three, he argues, shows that he paid Edmier's collectors from $114,000 to $150,000. He argues that the government, instead of showing what percentage discounts were given on various materials purchased, arbitrarily applied a 50% factor to all purchases. The effect, he says, was to reduce the amount paid by defendant and correspondingly increase the alleged unreported income. Defendant also complains of the district court's excluding from consideration an amount of $38,149.67 which should have been credited to the year 1962.

We think there is sufficient evidence to sustain the convictions. For the year 1960 the indictment, in Count I, charged defendant personally with evading payment of $8,276. There is evidence to show that of that amount $5,000 and $300 was paid him by checks for work done by Campione Company, and the receipt unreported in the return. There is also evidence of two checks totaling $6,000 for work done by the Company but carried on the books as loans. The $5,300 was charged to defendant together with $2,976 as his distributable share of the $6,000. For 1960 the records reflected approximately $26,000 in cash disbursements with no originally recorded purpose but with subsequent entries as expenses and the amount deducted in the 1960 tax return. The cash was derived from a Company check for a like amount.

Defendant argues that the $26,000 was used in the cash purchases from Edmier. But the district court did not believe defendant's testimony which was the basis of that argument. The testimony is credible only if the record shows the court should have believed the statements in affidavits of Edmier's employees Russo and Kay as to the cash received from defendant. Russo's affidavit does not stand against proof show-

ing that the amounts he received—in the light of the type material he sold and defendant used—could not have even approximated the amount in defendant's testimony; Kay repudiated the affidavit upon which defendant relies and which Kay testified defendant paid him $5,000 to execute. The court was not required to accept defendant's explanation that the affidavits were based on authentic records, Edmier sales tickets and the like, even though all tickets for all purchases were not in the evidence.

Count III[5] charged defendant with evading $77,000 in taxes and failing to report business income for 1962 of $91,000. There is evidence that checks were given defendant for Company work, endorsed by him and not carried in Company books. One, for $6,000, was deposited in a Sam Barlow account; others, for $25,000 and $20,000, were deposited in the Enterprise account; and another check for $28,500 was presented to the First State Bank of Worth for collection. The collection "advices" show the proceeds were paid to "Barlow." The same day "Barlow" (defendant) entered his safe deposit box at the bank.

There is also evidence of deductions as business expenses of $25,841 charged to materials on the books of Campione Company. The government established that the Campione Company books failed to reflect income of $73,994, improperly deducted the $25,841 and thus understated income by $99,835. It charged defendant personally with $88,835 of that amount plus the proceeds of the $25,000 and $3,432.40 Enterprise checks. It applied the 50% discount to the cash paid Russo and Kay for materials in computing the tax liability of defendant. Kay testified that the dis-

count on almost all items he sold was 50%, and Russo's collections were insubstantial. The government's use of this figure is accordingly not arbitrary. The government charged defendant with unreported income according to his interest in the Company, "as a constructive dividend or half interest in a partnership arrangement."

A sum of $38,149.87 was carried on the books of Enterprise, was treated by Campione Company in 1962 as cost of goods sold, and was deducted from the 1962 corporate tax return. Defendant claims credit for the sum which was returned to Campione Company in 1963 because although one-half of the sum is charged as income to defendant, the entire sum went back to the Company account. We agree with the government that what occurred in 1963 is irrelevant to what happened in 1962 so far as this case is concerned.

Defendant argues also that since the district court found him not guilty, as to Count II, we should ipso facto find him not guilty under Count IV of willfully understating gross profit. The argument is based on supposition and is unconvincing.

The district court discredited defendant's explanation of the discrepancies in receipts, business expenses and returns, and decided defendant and the Company had income willfully unreported to evade taxes. We cannot say the court erred in that decision. The proof was of substantial evasion and was sufficient for the district court decision, even though less than the amounts charged in the indictment. United States v. Johnson, 319 U.S. 503, 517–518, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943).

5. Defendant was found not guilty on Count II.