Hugo **ROMANELLI** and Norma Romanelli, Petitioners-Appellants,

v.

**COMMISSIONER of INTERNAL REVENUE, Respondent-Appellee.**

No. 18751.

United States Court of Appeals, Seventh Circuit.

Aug. 22, 1972.

As Amended Oct. 17, 1972.

quors" at 5158 West Irving Park Road in Chicago, Illinois. Beginning in February 1964, special agents of the Internal Revenue Service, Intelligence Division, visited petitioner's tavern for the purpose of placing wagers. On October 29, 1964 a search warrant was issued authorizing the search of premises ". . . being the ground floor of a one-story brick building at 5152 West Irving Park Road, Chicago, Illinois, commonly known as Parkside Liquors. . . ." The affidavit of a special agent on which the warrant was based set out reason to believe that listed wagering paraphernalia were being concealed on the premises, that the premises were not registered as an address where the business of accepting wagers was conducted, and that the premises were not the residence address of any Wagering Tax Stamp holder in the Chicago Internal Revenue District. Use of 5152 instead of 5158 as the street address was a mistake.

On October 29, 1964, in the afternoon, three special agents entered Parkside Liquors, joining a fourth who was inside by prearrangement, and served the warrant. The door to the premises was locked by the agents when they entered.[2] Agents asked each of petitioner's customers for identification, unlocked the door and permitted the customers to leave, then relocked the door.

Petitioner was asked if he had any weapons on the premises, then told to empty his pockets and place the contents on the bar; the $181 which he had on his person was seized. Petitioner sat at the bar and was questioned extensively for about forty-five minutes by one agent, with a second sometimes present, regarding his gambling activities during the past several years. He responded to most, if not all, the questions put to him. At trial petitioner stated he was nervous at the time, that he tried to be "cooperative" by answering all questions

Max A. Reinstein, Chicago, Ill., for petitioners-appellants.

Johnnie M. Walters, Asst. Atty. Gen., Tax Div., Joseph H. Reiter, Meyer Rothwacks, John P. Burke, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before KILEY, FAIRCHILD and SPRECHER, Circuit Judges.

FAIRCHILD, Circuit Judge.

Appeal by Hugo and Norma Romanelli from a decision of the United States Tax Court[1] affirming the commissioner's determination of deficiencies in income tax and addition of fifty percent of the underpayment for fraud pursuant to 26 U.S.C. § 6653(b).

Hugo Romanelli owned and operated a liquor store and bar called "Parkside Li-

1. 54 T.C. No. 138.

2. When the bolt on the Yale lock was in a release position the door locked automatically as it was closed. To unlock the door from the inside it was necessary to turn the handle that operated the spring type bolt.

as the agents wanted, and that he was scared. Petitioner was not advised of constitutional rights or given "Miranda warnings."

While petitioner was being questioned other agents searched the premises and seized written gambling documents covering a twelve day period in October. The documents disclosed gross wagers of $1,383 and net wagering income for the twelve day period of $410.10. Observations of various Special Agents during the pre-search investigation, together with statements and the records of petitioner obtained in the search, furnished the basis for the commission's determination of income tax deficiency.

Petitioner challenges the determination of the tax court on several bases: (1) that the documents seized should have been excluded because their seizure and use violated petitioner's rights under the fourth and fifth amendments to the United States Constitution; (2) that the statements made by petitioner during the search should have been excluded because the failure to give the "Miranda warning" violated petitioner's rights under the fifth and sixth amendments; (3) that the evidence was insufficient to sustain the imposition of an income tax deficiency or fraud addition for the years 1961 through 1964.

### (1) Documents seized.

The search warrant was grounded on probable cause to believe that 26 U.S.C. § 4412 was being violated. Petitioner asserts invalidity of the warrant on two grounds: (1) the particularity of description required in warrants is defeated by the incorrect address in the affidavit and in the warrant; (2) the decisions of the United States Supreme Court in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) which provide a self-incrimination defense against prosecution for failure to register or pay the occupational tax under the wagering statutes, likewise remove the basis for the finding of probable cause.

The description of the place to be searched has already been quoted. The building referred to contained three places of business. The only liquor establishment bore the number 5158 and displayed the sign, "Parkside Liquors." The number 5152 belonged to a butcher shop. The affidavit referred to observations of transactions with Romanelli in the "Liquor store." Fairly construing the description, its particularity was not spoiled by the use of the incorrect number 5152.

As to the second challenge, we conclude that the holdings of *Marchetti* and *Grosso* do not invalidate a warrant previously issued upon probable cause to believe there had been violations of the statutes with which *Marchetti* and *Grosso* dealt.[3] We are not at this time called upon to decide the question whether a warrant can presently be issued on probable cause to believe the wagering regis-

---

3. In so holding, we join each of the Circuits which have considered the question. DiPiazza v. United States, 415 F.2d 99 (6th Cir., 1969), cert. den. 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119; and United States v. Tiktin, 427 F.2d 1027 (6th Cir., 1970), cert. den. 402 U.S. 950, 91 S.Ct. 1608, 29 L.Ed.2d 120; United States v. Ferrone, 438 F.2d 381 (3rd Cir., 1971), cert. den. 402 U.S. 1008, 91 S.Ct. 2188, 29 L.Ed.2d 430; United States v. Hanon, 428 F.2d 101, 105 (8th Cir., 1970), cert. den. 402 U.S. 952, 91 S.Ct. 1608, 29 L.Ed.2d 122; Washington v. United States, 402 F.2d 3, 6 (4th Cir.,

1968), cert. den. 402 U.S. 978, 91 S.Ct. 1641, 29 L.Ed.2d 145, rhrg. den. 403 U.S. 940, 91 S.Ct. 2242, 29 L.Ed.2d 720.

Respondent contends that one of the corollaries of Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), is that evidence seized under a warrant valid when issued is left unscathed by the *Marchetti* and *Grosso* decisions. Although the facts appear to have presented the issue of validity of a similar warrant, the issue was not discussed in any of the opinions. As we read the case, validity was assumed but not necessarily decided.

tration and excise provisions are being violated.[4]

Even if we assume that the virtual certainty that a *Marchetti-Grosso* defense exists in most situations negatives probable cause to believe that there has been an offense against these statutes and thus prevents the issuance of a valid warrant, we conclude that this aspect of *Marchetti* and *Grosso* should be limited to prospective effect.

The appropriateness of retroactive application of *Marchetti* and *Grosso* has been explicitly determined in two cases before the United States Supreme Court, both arising from the Seventh Circuit. One denied and one granted retroactive effect. Neither goes precisely to the issue here involved, but our case falls somewhere between them.

In United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971)[5] Angelini had been convicted for failing to register as a gambler pursuant to 26 U.S.C. § 4412. Thereafter the United States instituted forfeiture proceedings pursuant to 26 U.S.C. § 7302 for cash which Angelini had in his possession at the time of arrest. This court initially affirmed the forfeiture order, but on reconsideration in light of *Marchetti* and *Grosso*, pursuant to remand, reversed and ordered

return of the seized money. The decision was based on the conclusion that "violations (of §§ 4411 and 4412) are no longer punishable directly (and) (i)t follows that they should not be punished indirectly through forfeiture."[6]

The Supreme Court agreed, stating that the forfeiture statutes were intended to impose a penalty, and held that it followed from *Marchetti* and *Grosso* that the fifth amendment privilege could be claimed in a forfeiture action. As to retroactive application of that conclusion to Angelini the court distinguished between retroactivity decisions (a) concerned with "implementation of a procedural rule" where the issue is whether lack of application of the new rule undermines the basic accuracy of the fact-finding process at trial, and (b) those concerned with "conduct that cannot constitutionally be punished in the first instance"—where, in "the absence of a waiver of that right, such persons could not properly be prosecuted at all." In the first it was said that retroactive application was required where the new rule substantially improved the accuracy of the fact-finding process at trial; "because the failure to employ such rules at trial meant there was a significant chance that innocent men had been wrongfully punished." As to the second, which the court found descriptive of the

---

4. The Court in Marchetti v. United States, *supra*, 390 U.S. at 61, 88 S.Ct. 697, was careful not to hold the wagering tax provisions constitutionally impermissible, but rather only to insure the defense of the constitutional privilege against self-incrimination in prosecutions for failure to comply. The Fourth Circuit in Washington v. United States, *supra*, 402 F.2d at 6, relied on the Court's language to that effect to declare valid post-*Marchetti* search warrants issued upon cause to believe the wagering tax provisions are being violated. Our acceptance of search warrants issued before *Marchetti* and *Grosso*, does not necessitate adoption of the holding in Washington v. United States, *supra*, that the wagering statutes continue to suffice as the basis for a warrant. We note Mr. Justice Brennan's dissent to the denial of certiorari for Washington v. United States, 402 U.S. 979, 91 S.Ct. 1642:

" . . . where, as here, the affidavits in support of the warrant indicate the likely existence of an absolute defense to the crime charged that will be unavailing only if waived by the accused, it is surely not evidence that the Fourth Amendment's requirement of probable cause to believe that an offense has been committed *has been satisfied*."

5. 393 F.2d 499 (7th Cir., 1968).

6. 393 F.2d at 500. The Sixth Circuit reached a contrary result in United States v. One 1965 Buick, 392 F.2d 672, 676 (6th Cir., 1968) on the idea that the "primary purpose of the (forfeiture) statute is the protection of the revenue through the effective enforcement of the revenue laws," and not as punishment. The Supreme Court granted certiorari to resolve the conflict.

Angelini forfeiture action, even the use of impeccable fact-finding procedures could not legitimate a verdict decreeing punishment or penalty—"for the conduct being penalized is constitutionally immune from punishment."

In Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) [7] defendant's monthly wagering excise tax returns had been introduced at trial to prove his evasion of income taxes. After *Marchetti* and *Grosso* were decided Mackey moved to have his sentence vacated. The Supreme Court affirmed denial, refusing to apply *Marchetti* and *Grosso* retroactively on those facts:

> "The short of the matter is that *Marchetti* and *Grosso* raise not the slightest doubt about the accuracy of the verdict of guilt returned here. Under these circumstances, the principles represented by *Elkanich* [Elkanich v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388], and *Williams* [Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388], as well as by *Tehan* [Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453] and *Johnson*, must control. For *Tehan* and *Johnson* indicate that even though decisions reinterpreting the Fifth Amendment may create marginal doubts as to the accuracy of the results of past trials, the purposes of those decisions are adequately served by prospective application." 401 U.S. 675, 91 S.Ct. 1165.

In United States Coin & Currency, *supra*, the conduct penalized (by forfeiture) was the refusal to incriminate oneself by registering. Since the Court had held in *Marchetti* and *Grosso* that that conduct could not be validly punished, the retroactivity of those decisions was not limited. In Mackey v. United States, *supra*, the conduct actually punished was evasion of taxes, and the use of the information which Mackey had supplied did not undermine the accuracy of the fact-finding process.[8] The instant case unlike *Coin & Currency* and like *Mackey*, does not involve a penalty for conduct which cannot be validly punished.

■ When retroactivity is not compelled by the fact that constitutionally immune conduct is being punished, or that the new rule will substantially improve the accuracy of the fact-finding process, the threefold analysis of Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967), is appropriate:

> "The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

Agents obtaining search warrants before *Marchetti* and *Grosso* in aid of enforcement of the statutes affected by those decisions were relying on definitive holdings that those statutes were valid. United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953) and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955). Balancing all the elements above mentioned including reliance we have no doubt that *Marchetti* and *Grosso* did not invalidate warrants otherwise valid and issued before those decisions.

■■ Further, we find no merit in petitioner's argument (1) that a search pursuant to a warrant (issued upon probable cause) was invalid because criminal prosecution did not follow, or (2) that the materials seized were of such character that seizure under a valid warrant amounted to compulsory self-incrimination.[9]

---

7. 411 F.2d 504 (7th Cir., 1969).

8. See also Zizzo v. United States, 447 F.2d 857 (7th Cir., 1971).

9. Most of the materials were wagering slips and the like, and thus paraphernalia of illegal gambling. We do not consider Hill

Accordingly we hold that Romanelli was not entitled to exclusion of the evidence seized pursuant to the warrant.

### (2) *Statements made by Romanelli.*

Petitioners sought, unsuccessfully, to have the Tax Court exclude statements made by Hugo Romanelli while the agents were searching the Parkside Liquor premises. It is clear that no *Miranda* [10] warnings were given. The questions are: Was *Miranda* applicable to the interrogation, so that his statements could not have been used to establish a criminal charge against him? If so, could the statements be used to establish the government's case in a civil proceeding concerning tax liability?

■■ *Miranda* is applicable to an official interrogation of one who is in custody or deprived of his freedom in any significant way. Although Romanelli was not formally placed under arrest, the surrounding circumstances were at least as coercive and indicative of custodial interrogation as in United States v. Lackey [11] where this court held *Miranda* warnings required. The tax court majority, although finding it unnecessary to decide whether the interrogation was custodial, suggested that it may have been. We conclude that, during the interview, Mr. Romanelli was deprived of his freedom in a significant way, within the meaning of *Miranda*.[12] Thus *Miranda* was applicable, and his statements could not have been used by the government to establish its case in a criminal prosecution.

■ The more difficult question is whether statements made under circumstances where *Miranda* warnings were required but not given may be used by the government to establish civil liability of the person interrogated.[13]

■ It has now been made clear that failure to give the *Miranda* warnings where required does not universally require exclusion of the statements produced by the interrogation. Harris v. New York.[14] In *Harris*, statements which the state could not have used, for lack of *Miranda* warnings, to establish its case in chief were held admissible to impeach the defendant after he took the stand and gave testimony inconsistent with the statements. A distinction was suggested between a statement the trustworthiness of which was dubious because of coercion of greater degree than official, custodial interrogation and absence of warnings and a statement voluntary and admissible but for the lack of warnings. There is no claim here that the statements were produced by coercion of the greater degree.

But although the statement was made in *Harris*, "Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution on its case in chief," the context was a criminal prosecution, where the court balanced the usefulness of the defendant's statement in exposing his perjury against the deterrent effect of exclusion and contrasted that with the decision to exclude such statement from the case in chief. We do not think, in this context, that the statement made in *Harris* implies a rule that the only situa-

---

v. Philpott, 445 F.2d 144 (7 Cir., 1971), cert. den. 404 U.S. 991, 92 S.Ct. 533, 30 L.Ed.2d 542 applicable.

10. Miranda v. Arizona and Westover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965).

11. 413 F.2d 655 (7th Cir., 1969).

12. Romanelli is not in a position to base his claim on United States v. Dickerson, 413 F.2d 1111 (7th Cir., 1969), since *Dickerson* was limited to prospective ef-

fect and the interview of Romanelli had already occurred.

13. The interrogation of Romanelli also preceded the *Miranda* decision date, but *Miranda* applies retroactively in cases where the trial did not begin until after June 13, 1966. Johnson v. New Jersey, 384 U.S. 719, 734, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

14. 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed. 2d 1 (1971).

tion where failure to give *Miranda* warnings will ever result in exclusion is the case in chief in a criminal prosecution. Rather, *Harris* focuses attention on balancing, as a matter of policy, the deterrent effect of exclusion on proscribed police conduct in the particular circumstances.

In such balancing process, we prefer the policy judgment that exclusion from establishing the government's civil case is an appropriate and desirable deterrent. The agents were proceeding at least in the form of preliminary stages of a criminal prosecution, obtaining and executing a search warrant, and presuming to restrain Romanelli's liberty for the purpose of interrogation about matters which could as well involve criminal as civil liability. They derived substantial advantage from use of their status as law enforcement officers. To permit them, so proceeding, to infringe upon Romanelli's constitutional protection against self-incrimination, to an extent that the right to use his statements to establish a criminal charge was forfeited, but to award the advantage of using his statements in establishing civil liability seems unwholesome and an abuse of power. The balance in favor of deterrence seems significantly different from the *Harris* situation, where an improperly obtained statement will be useful only in the event the defendant testifies and appears to perjure himself.

One argument made by the government is tantamount to saying that failure to give *Miranda* warnings produces, by virtue of the *Miranda* decision, an immunity from any use of statements in establishing a criminal charge, and thus the constitutional privilege is fulfilled and the resulting statement is fair game for any other purpose. Although interrogation under an appropriately drawn immunity statute might well reach that result,[15] we do not agree that the effect of unlawful interrogation, ostensibly for the purpose of criminal law enforcement, should be the same.

(3) *Insufficiency of evidence.*

The evidence now in the record, if admissible, would support the result reached. Since, however, the matter must be remanded for trial with some of the evidence excluded, there is no purpose in further comment on this point.

The judgment of the Tax Court is reversed. With respect to Norma Romanelli only, it is determined that she is not liable for the 50% penalty sought, by virtue of Sec. 2 of P.L. 91–679, amending 26 U.S.C. § 6653(b), and Sec. 3, making the amendment retroactive. In other respects, the cause is remanded for further proceedings consistent with this opinion.

---

15. See Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1652, 32 L.Ed.2d 212 (1972).