EFRAIN T. SUAREZ AND ZENAIDA SUAREZ, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4196–67. Filed March 26, 1974.

*Martin J. Nash*, for the petitioners.
*Dennis J. Fox*, for the respondent.

## OPINION

HOYT, *Judge:* Petitioners resided in Miami, Fla., when they filed their petition herein. They filed joint Federal income tax returns for 1963 and 1964, in which they reported very substantial gross income from Efrain's medical practice and claimed numerous expenses and deductions. Since Zenaida Suarez is a party hereto merely because she joined in these returns, Efrain will sometimes hereinafter be referred to as the petitioner. The respondent has determined the following deficiencies in the petitioners' income tax and has imposed the following penalties:

| TYE | Deficiency | Penalty (sec. 6653(a))[1] |
| --- | --- | --- |
| Dec. 31, 1963 | $354, 959. 96 | $17, 748. 00 |
| Dec. 31, 1964 | 358, 649. 62 | 17, 932. 48 |

In a statement attached to the statutory notice of deficiency respondent explained that it had been determined that the gross receipts from petitioner's business totaled $528,888.58 in 1963 and $609,877.67 in 1964 in lieu of $107,938 in 1963 and $129,064 in 1964, as reported on petitioners' returns. It was also determined that part of the underpayment of tax for the 2 taxable years was due to negligence or intentional disregard of rules and regulations, giving rise to the assertion of the 5-percent addition to tax provided by section 6653(a) in ·each of the taxable years involved. No other adjustments were made by the statutory notice, and the deficiencies and penalties determined resulted entirely from the increased gross receipts described above.

'Only a brief summary of the pertinent facts will be made herein in light of our earlier opinion in this case. The Findings of Fact and Opinion appearing in *Efrain T. Suarez*, 58 T.C. 792 (1972), are incorporated herein by this reference.

In November 1963, the Miami Police Division and the State Attorney's Office of Dade County, Fla., suspecting that illegal abortions were being performed at a clinic operated by petitioner, determined to develop evidence for prosecution of those at the clinic found to be involved in such illegal acts. There followed a 4- to 6-week investigation, culminating in detailed planning for a raid at the premises of the clinic on January 3, 1964.

---

[1] Unless otherwise noted, all statutory references are to the 1954 Internal Revenue Code, as amended.

To implement the planned raid two policewomen (Barbara Williams and Myrtle Ellison) gained entrance to the clinic, pursuant to a prearranged appointment, on the pretext of securing the abortion of a pregnancy feigned by Barbara. When the stage was set by the payment of the prescribed fee (in bills of recorded seriality) and the initiation of the preliminary arrangements for Barbara's purported operation, Myrtle excused herself for breakfast. Once outside the clinic she summoned other police officers and agents of the State Attorney's Office, who were awaiting her signal, and informed them that the money had changed hands and the petitioner was preparing to attempt the "arranged" abortion on Barbara.

The officers entered the public waiting room and knocked on the closed inner door to the examining rooms, which had been relocked after Myrtle's exit. After announcing their identities, but not their purpose, and receiving no reply, they knocked again and immediately proceeded to break the door down. In spite of weeks of preparation for the raid, no warrants were obtained either for arrests or for a search of the clinic.

The petitioner and several other employees were then arrested and the premises searched. In the course of the search petitioner's daily records, containing details of the clinic's business in 1963, were discovered and seized.

The seized records and evidence obtained in the raid were the basis for an information returned against petitioner for violation of Florida statutes prohibiting abortions. After trial in which this same evidence was used, petitioner was convicted in 1965, but later following affirmation of the conviction in the Florida courts and denial of a writ of certiorari by the United States Supreme Court, he was released on a writ of habeas corpus by the United States District Court for the Southern District of Florida in 1969. That court found that the forced entry at the clinic was illegal and the evidence upon which the conviction was based was obtained as a result of an unlawful search and seizure violative of the fourth amendment to the United States Constitution. The judgment of conviction was vacated and petitioner set free. He was never retried in the Florida courts.

Shortly after the raid the daily records seized from the clinic were made available by the Miami law enforcement officials, who had conducted it, to agents of the respondent. The deficiency determined by respondent for 1963 was based solely on an analysis of these records and leads obtained therefrom. Since no records were available for 1964, respondent based the deficiency asserted for that year on projections he made from the 1963 records seized in the raid. Respondent made no independent investigation, audit, or examination whatever to determine petitioners' income or the correctness of their returns for

either year before us and has stipulated that his determination was based solely on the records seized in the 1964 clinic raid and leads derived therefrom.

The petitioners filed several motions in advance of trial in which they alleged that the respondent based his determination upon evidence which was obtained from them in violation of their rights under the United States Constitution. Hearings were held thereon, evidence was submitted, arguments were made, and briefs filed. In an opinion filed on August 10, 1972, and published at 58 T.C. 792, we held that fourth amendment proscriptions applied in a civil tax case.[2] On the record before us we reached the same conclusion as that reached by the United States District Court for the Southern District of Florida in the habeas corpus proceeding before it in 1969. We concluded that the forced entry, raid, and seizure of evidence without warrants in 1964 were illegal and in violation of petitioner's fourth amendment rights. We then pointed out that in addition to suppression of the tainted evidence in this case, in which the burden of proof rests upon the petitioner to show error in respondent's determination, further action should be taken to effect a disincentive to the use of constitutionally tainted evidence and also to protect judicial integrity.[3] We finally concluded therefore that the presumption of correctness normally attached to respondent's determinations of deficiencies was destroyed and that the burden of producing and going forward with the proof in this case shifted to the respondent, who had the duty to present independent, untainted evidence to sustain his asserted deficiencies.

On August 16, 1972, pursuant to the above-mentioned prior opinion herein, we ordered:

(1) That the burden of producing and going forward with the proof is shifted to the respondent to establish the existence of a deficiency with evidence which is not the fruit of an illegal search and seizure; and

(2) That the respondent shall have leave to file, within 30 days of the date of this order, a further amended answer containing a statement of any facts upon which he will rely when the trial resumes to sustain his asserted deficiency.

The respondent did not take advantage of the leave granted by the

---

[2] Compare *Romanelli* v. *Commissioner*, 466 F.2d 872 (C.A. 7, 1972), reversing 54 T.C. 1448 (1970), in which fifth amendment protections were extended to civil tax cases, and evidence obtained in violation of petitioner's fifth amendment rights was excluded as an appropriate and desirable deterrent. See also *Mapp* v. *Ohio*, 367 U.S. 643, 646–647 (1961), holding and quoting with approval *Boyd* v. *United States*, 116 U.S. 616, 630 (1886), that the doctrines of the fourth and fifth amendments run "almost into each other" and apply to all invasions of the sanctity of a man's home and the privacies of life so that any forcible extortion of a man's testimony or of his private papers to be used as evidence to convict him of crime or to forfeit his goods is within the condemnation of those amendments.

[3] See also Paulsen, "The Exclusionary Rule and Misconduct by the Police," 52 J. Crim. L.C. & P.S. 255 (1961).

Court to file an amended answer. Following further hearings on other motions and pursuant to order and notice, trial of the case was held on January 31, 1973. The respondent declined to proceed and did not produce or go forward with evidence to establish the existence of a deficiency, if any, or the amount thereof for either year before us.

As a result of the respondent's failure to file an amended answer and to go forward with proof at the trial, we are left with a statutory notice of deficiency bereft of its usual presumption of correctness, the pleadings of the parties, and the record of all proceedings herein. The case stands before us without an iota of acceptable evidence to sustain the respondent's asserted deficiencies.

We think the respondent's duty in this case has been made quite clear. In our prior opinion in this matter, at page 814, we pointed out that—

the respondent has a duty in the case at bar not only to cleanse the evidence but also, *if he wishes to be sustained in his determination herein,* to present evidence to support it which is free of unconstitutional taint. [Emphasis added.]

We have given the respondent every opportunity to present such evidence, and he has chosen not to do so. He still contends that, because the burden of proof has not shifted, it is incumbent upon the petitioners to go forward with the evidence, and not the respondent.

It is clear from our earlier opinion that we regarded the petitioners as having shown error in the correctness of the statutory notice here involved and the deficiencies determined therein. We held that the petitioners had established the constitutionally deficient nature of the statutory notice, and we ordered the respondent to go forward with the evidence "if he wishes to be sustained in his determination herein." At that time the petitioners must be regarded as having met their burden of proof, so as to be in the same posture as any taxpayer before us who has established a prima facie case.

In *Paul J. Byrum,* 58 T.C. 731 (1972), we concluded that where a petitioner has introduced sufficient evidence to establish a prima facie case, the burden of producing proof then shifts to respondent to present evidence to the contrary. If he fails to do so he cannot prevail. We stated (p. 735):

In the circumstances of this case, we think the evidence produced by petitioner was at least sufficient to establish prima facie that petitioner's Chappell stock became worthless in 1967. The burden thus shifted to respondent to present evidence to the contrary. Yet he called no witnesses, offered no exhibits to refute the case presented by petitioner, and developed nothing of significance, through cross-examination. On this record, we hold that petitioner is entitled to the disputed deduction.

Here, as in *Byrum,* petitioners have established a prima facie case and the respondent has failed to go forward with evidence when the

burden of doing so has shifted to him, and we have ordered him to produce evidence to establish deficiencies if he is to be sustained. In light of our earlier opinion in this case, the authorities cited therein, our opinion in *Paul T. Byrum, supra,* and the entire record before us, we must conclude and hold that the respondent cannot be sustained in his determination herein.[4] In the circumstances of this case petitioners must prevail.

*Decision will be entered for the petitioners.*

[4] At the trial the respondent filed a "Motion to Dismiss for Lack of Prosecution or, Alternatively, for Judgment on the Record." Consistent with our discussion herein, we can only conclude that it is respondent who has failed to prosecute his case after having been ordered to proceed with proof and ample opportunity thereafter to prepare for trial; that motion is denied. At the trial, the petitioners made an oral motion for judgment on the record. That motion is, in effect, hereby granted.

