UNITED STATES of America

v.

AMERICAN INVESTORS OF PITTS-
BURGH, INC., John J. Bruno, John W.
Mendicino, Charles Krzywicki, Allan
Zytnick, and Louis J. Pecori.

Crim. No. 87–96.

United States District Court,
W.D. Pennsylvania.

Sept. 30, 1987.

Phillip Ignelzi, Asst. U.S. Atty., Pitts-
burgh, Pa., for plaintiff.

Stanton D. Levenson, Richard Wile,
Thomas A. Livingston, James A. Villanova,
Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

The defendants have moved to suppress
confessions made during the execution of a
search warrant alleging violations of their
fifth amendment rights. At issue is wheth-
er the defendants were in custody when
the government agents interrogated them.

■ The concept of custody for purposes
of the *Miranda* doctrines has eluded pre-
cise definition. Courts examine the amal-
gam of factors present in a particular inter-
rogation and make a judgment based on
the sum of those factors. The facts, there-
fore, are particularly important in deter-
mining custody, and this court will state its
factual findings in some detail. *United
States v. Mesa*, 638 F.2d 582 (3d Cir.1980).

### Findings of Fact

In September, 1982, Special Agents of
the Internal Revenue Service began investi-
gating the activities of American Investors
of Pittsburgh, Inc. The agents consulted
with the United States Attorney's office
and decided to conduct a raid on American
Investors' office. The team of I.R.S.

agents met ten to twelve times and planned every detail of the raid. Based on the advice of an Assistant United States Attorney, the agents decided not to administer the *Miranda* warnings before interrogating American Investors employees.

On May 13, 1983 at 2:45 p.m., thirty-seven Internal Revenue Service Agents and Securities and Exchange personnel entered American Investor's office. Special Agent Tate, supervisor of the raid, held his badge and a search warrant above his head and announced in a loud voice that he was taking control of the premises in order to execute a search warrant. He instructed the employees to stop working and place their hands on their desks. Meanwhile, the other agents positioned themselves so that one agent was standing by each employee. The agents were wearing guns under their jackets which were visible to some of the employees at times. The agents then placed defendants Krzywicki and Mendicino against the wall and frisked them.

Over the next ten hours, the agents searched the office and interrogated the employees. Agents searched the briefcase of the only customer present and allowed him to leave. The agents removed the employees to various locations for individual questioning. Some were taken to private offices with the door closed, and others were taken up to the seventeenth floor to a United States Postal Inspector's office. At both locations, the employees were isolated; the only persons present for the interrogation were the employee and two or three agents. One agent asked the questions while another agent sometimes stood in front of the door with his arms crossed.

The defendants each testified that they did not feel free to leave. Agent Tate testified that he announced that everyone was free to leave when he first entered. Agent Tate made this announcement during the initial commotion of the raid, however, and the majority of the defendants did not hear or understand him (in fact, some defendants testified that they initially thought the raid was a robbery). With the possible exception of the general announcement during the initial commotion of the raid, the agents never told the employees prior to interrogation that they were free to leave, never informed them that the questioning was voluntary, and never read them the *Miranda* warnings.

During the interval between the initial entry and the individual interrogations, the agents greatly restricted the movements of the employees. An agent closely monitored each employee, preventing him from using his computer or making telephone calls. If an employee needed to use the bathroom, he or she had to obtain permission and an agent accompanied him or her to the bathroom door. If an employee asked an agent what was happening, the agents were often non-responsive. At approximately 3:00 p.m., defendant Mendicino told an agent that he had an 8:00 p.m. meeting, and the agent suggested that he cancel the meeting. All of the defendants felt compelled to answer the questions, and none left before being interrogated.

### Legal Analysis

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court concluded that government agents must make proscribed warnings to those in custody or those who have been "deprived of [their] freedom of action in any significant way." *Id.* at 444, 86 S.Ct. at 1612. Since 1966, the courts have explored extensively the precise circumstances in which the *Miranda* warnings are required. This judicial exploration has been so thorough that an American Law Reports annotation, 31 A.L.R.3d 565 § 18[b], lists seventeen cases directly addressing the issue of custody in interrogations conducted by Internal Revenue Service agents at the defendant's place of business.

The courts examining this narrow issue inevitably reduce their examination to a determination of whether the defendant had a reasonable belief that his freedom of action had been restricted in a significant way. This determination is factual, and is closely related to the actions of the IRS agents in conducting the interrogations.

■ Among the cases addressing the issue of custody in interrogations conducted at the defendant's place of business by Internal Revenue Service agents, two contain facts particularly similar to those surrounding the instant interrogations. In *United States v. Lackey*, 413 F.2d 655 (7th Cir.1969), two IRS agents visited Lackey at his place of business. They asked him if he would be willing to answer some questions at a different location. Lackey agreed and appeared as requested at an office at the post office. The office was a small room with no windows and only a long table and some chairs. The session was tape recorded and Lackey was placed under oath. The agents told him that he had the right to refuse to answer questions. The door was closed and the only persons present were Lackey and the two agents.

The circuit court affirmed the district court's finding that the defendant was in custody. The court based its findings on the physical surroundings, "starkly, formally interrogatory," on the fact that the defendant was not told that he was free to leave or that attendance was purely voluntary, and on the nature of the questioning, including the tape recording and the oath. The court excluded the confession.

The interrogations at American Investors were, if anything, more custodial than those in *Lackey*. Lackey voluntarily appeared for questioning whereas the present defendants were questioned during the raid while thirty-seven IRS agents controlled the premises. Both were interrogated under formal interrogation conditions, with a single suspect and multiple agents in small enclosed offices. Lackey was informed at the beginning of the interrogation that he had the right to refuse to answer questions, while the present defendants were given no such warnings. Although Lackey was placed under oath and the session was recorded, this court finds that the present defendants' belief that they were compelled to remain was as reasonable as Lackey's.

In *Romanelli v. Commissioner of Internal Revenue*, 466 F.2d 872 (7th Cir.1972), Romanelli was a tavern owner. Four agents went to his tavern to execute a search warrant. They locked the doors and required all the patrons to produce identification and leave. Agents made Romanelli empty his pockets, then questioned him for forty-five minutes while other agents conducted the search. No one advised Romanelli of his rights. The Seventh Circuit held that during the interview, Romanelli was deprived of his freedom of action in a significant way and that the circumstances were coercive and indicative of custodial interrogation.

The interrogations at American Investors were as custodial as those in *Romanelli*. In both cases, IRS agents came to the defendant's place of business to execute a search warrant. The agents took complete control of the premises, interrogated the defendants during the search, and failed to adequately inform the defendants that they were free to leave or to refuse to answer questions.

Courts have also admitted confessions elicited by IRS agents at the defendants' business premises, but those cases are factually distinguishable. The Seventh Circuit admitted the confession in *United States v. Mapp*, 561 F.2d 685 (7th Cir.1977). Agents interviewed Mapp several times at the tavern he owned without reading him *Miranda* warnings. The court concluded that the interrogations were not custodial because the interviews occurred in familiar surroundings with no physical compulsion.

The distinction between the results that the Seventh Circuit reached in *Lackey* and *Romanelli* and the result reached in *Mapp* is that in the former two cases, the physical surroundings were much more dominating and intimidating than in the latter case. Agents asked Lackey to go to another office to interrogate him in a more stark, formal setting. Lackey reasonably felt his liberty was restricted under those circumstances. Agents interrogated Romanelli in the midst of a raid on his tavern, and he reasonably felt that his liberty was restricted. Similarly, the defendants at American Investors were questioned in the midst of a thirty-seven man raid under austere interrogation conditions. Their belief that their liberty had been restricted was reasonable.

Two Pennsylvania district courts have reviewed interrogations by IRS agents at the defendants place of business. Both courts found that the interrogations were not custodial. In *United States v. Jaskiewicz*, 278 F.Supp. 525 (E.D.Pa.1968), two agents went to Jaskiewicz's office to question him about his tax returns. They told Jaskiewicz that he had the right to remain silent and the right not to incriminate himself, but did not inform him of his right to counsel. In *United States v. Fiore*, 258 F.Supp. 435 (W.D.Pa.1966), agents met several times with Fiore and his accountant in connection with an investigation of his tax returns. On some of those occasions, Fiore was advised of his right to remain silent. On others, he was not. Both of these cases differ from the American Investors interrogations in that they lacked the physical intimidation and psychological pressures deliberately created by the IRS agents in the American Investors raid.

### Conclusion

■ Thirty-seven IRS agents invaded the American Investors office on May 13, 1983 in order to execute a search warrant. They seized control of the premises and ordered the employees to sit with their hands on their desks in order to execute that search warrant. The agents closely monitored every movement of the defendants in order to ensure that they did not interfere with the search. In so behaving, the agents were vigorously performing their jobs while staying within the bounds set by the fourth and fifth amendments.

The agents crossed those bounds and infringed the defendants' rights when they used the control and intimidation inherent in the manner they executed the search warrant to facilitate interrogation without giving *Miranda* warnings. The agents and the Assistant United States Attorney made a deliberate attempt to circumvent *Miranda,* and this court discourages such attempts.

For the above reasons, this court finds that certain defendants' fifth amendment rights were violated. The statements made by the defendants on May 13, 1983 at the American Investors office will be excluded at trial. An appropriate order will be entered.

### ORDER

AND NOW, this 30th day of September, 1987, after careful consideration and a suppression hearing,

IT IS HEREBY ORDERED as to defendants' motions that:

(1) Motion to Compel Production of Grand Jury Transcripts is DENIED;

(2) Motion to Compel Written Statement of Uncharged Misconduct Evidence is DENIED;

(3) Motion for Disclosure of Impeachment and/or Exculpatory and/or otherwise Favorable Evidence is DENIED. *See United States v. Starusko*, 729 F.2d 256 (3d Cir.1984) and *United States v. Higgs*, 713 F.2d 39 (3d Cir.1983);

(4) Motion for Bill of Particulars is DENIED. *See United States v. Addonizio*, 451 F.2d 49 (3d Cir.1972);

(5) Motion for Detailed Proffer of Substantial and Independent Evidence of Conspiracy is DENIED. *See United States v. James*, 590 F.2d 575 (5th Cir.1979);

(6) Motion to Suppress Evidence Obtained from Pittsburgh National Bank pursuant to a Grand Jury Subpoena is DENIED. *See In Re Swearingen Aviation Corp.*, 605 F.2d 125 (4th Cir.1979) and *In Re Seiffert*, 446 F.Supp. 1153 (N.D.N.Y. 1978);

(7) Motion to Dismiss Counts Ninety-Five through One Hundred Fifty-six Involving Violations of 18 U.S.C. § 1001 is DENIED but without prejudice to being renewed after the government has presented its evidence in support of said Counts. *See United States v. Molinares*, 700 F.2d 647 (11th Cir.1983);

(8) Motion to Dismiss Count One and Counts Forty-eight through Ninety-four for failure to state a criminal violation is DENIED;

(9) Motion to Dismiss Counts Twenty-three through Forty-seven and Eighty-seven through Ninety-four is DENIED. *See*

**854**

*Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) and *United States v. Torquato,* 602 F.2d 564 (3d Cir. 1979);

(10) Motion to Suppress Statements of Defendants John J. Bruno, John W. Mendicino, Charles Krzywicki and Louis J. Pecori taken May 13, 1983 is GRANTED and such statements may not be admitted as evidence or referred to at the trial of the above-captioned case. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

(11) Motion to Suppress Seized Evidence from the premises of defendant American Investors of Pittsburgh, Inc. on May 13, 1983 is DENIED. *See United States v. Wheeler,* 256 F.2d 745 (3d Cir.1958) and *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978);

(12) Motion to Invalidate the Search Warrant is DENIED. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1894) and *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983);

(13) Motion to Dismiss the Indictment is DENIED;

(14) Motion to Suppress Statements of the defendant Allan Zytnick is DENIED; and

(15) Motion to Compel Productions of Documents is DENIED in PART and GRANTED in PART, and Pittsburgh National Bank shall forthwith produce for inspection and copying by counsel for defendants all documents written and relied on by Pittsburgh National Bank officials and/or employees concerning the practices and policies of Pittsburgh National Bank regarding its filing and/or not filing of Currency Transaction Reports during the period of time from May 17, 1979 up to and including January 1, 1985.