JOHNNY WEIMERSKIRCH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6317–74.   Filed January 17, 1977.

*Robert E. Kovacevich,* for the petitioner.
*T. N. Tomashek,* for the respondent.

HALL, *Judge:* Respondent determined an $8,356 deficiency in petitioner's 1972 Federal income tax. Respondent also asserted a late filing penalty of $1,453.75 under section 6651(a).[1]

The issues raised are as follows:

(1) Whether petitioner had unreported income in 1972 from the sale of heroin.

(a) Whether respondent's determination was arbitrary and unreasonable.

(b) Whether petitioner is entitled to the names of two confidential informers upon whose information respondent partially based his determination letter.

---

[1] All section references are to the Infernal Revenue Code of 1954, as in effect during the year in issue.

(c) Whether petitioner is entitled to review the file used by respondent's revenue agent to refresh his recollection prior to testifying.

(2) Whether the late filing of petitioner's return was due to reasonable cause.

(3) Whether petitioner was subject to the self-employment tax under section 1401.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time petitioner filed his petition he resided in the State of Washington.

Petitioner graduated from high school in Coulee City, Wash., in June 1969. The summer following graduation he worked on his parents' farm. During the academic year 1969–70 he attended Spokane Community College full time. The summer following completion of his first year of college, he returned to his parents' farm to work. He attended Spokane Community College part time during the academic year 1970–71. During that school year he helped his parents by picking up spare parts for their farm machinery from suppliers in Spokane. Thereafter he did not attend school, but did continue to help his parents by doing errands for them.

In 1972 petitioner's parents gave him at least $1,900, including $370 wages which they deducted as a business expense. His parents also made him gifts of groceries.

Respondent determined that petitioner had unreported income from the sale of heroin in 1972. On the basis of information received from two informers, together with additional information from the Drug Enforcement Administration of the Department of Justice, the Yakima Police Department, and the Spokane Police Department, respondent concluded that petitioner had sold heroin from the late spring of 1972 until the end of 1974. In the statutory notice respondent calculated this unreported income in 1972 in the following manner: He first determined that petitioner had sold heroin during at least 25 weeks in 1972; that in each week petitioner sold approximately 70 quarter spoons of heroin, and that a quarter spoon of heroin sold for $30. Respondent thereafter determined petitioner's weekly sales revenue to be $2,100. Respondent next deducted from the

weekly revenue figure the cost of the heroin sold, which he determined to be $900 per week. Thus respondent determined that petitioner's weekly net income was $1,200, resulting in net income for the 25 weeks of $30,000. Respondent allowed no other expenses to petitioner in calculating the amount of his unreported income.

Under section 6851 respondent terminated petitioner's 1972 year as of November 30, 1972. Respondent then assessed and collected $3,179 tax for that period. Petitioner did not file his 1972 income tax return until September 4, 1973. On his return he reported wages of $370 and other income of $5,392. Respondent in his statutory notice of deficiency determined that petitioner had $24,608 of additional income which he had failed to report on his return. After allowing petitioner the standard deduction and a personal exemption, respondent calculated that petitioner had a total tax liability of $8,994 and a deficiency in tax of $8,356. Respondent allowed as a credit against the tax owed the $3,179 which he had earlier collected from petitioner.

## OPINION

The first issue is whether petitioner has overcome the presumptive correctness of respondent's determination that petitioner had unreported net profits from the sale of narcotics in 1972.

At the trial petitioner made an oral motion to shift the burden of proof to respondent and called the revenue agent as a witness in support of his motion. The revenue agent testified in detail regarding the method he employed in computing petitioner's income for 1972. He obtained the factual basis for his computation of omitted income attributable to sales of heroin from statements of two confidential informers and information from the Drug Enforcement Administration of the Department of Justice, the Yakima Police Department, and the Spokane Police Department. The burden was on petitioner to show that respondent's determination was arbitrary and unreasonable. *Helvering v. Taylor*, 293 U.S. 507 (1935); *Harold E. Harbin*, 40 T.C. 373, 376 (1963). On the evidence presented we held that respondent's determination was not arbitrary and unreasonable and denied petitioner's motion to shift the burden of proof. While the revenue agent's

testimony was hearsay, not admissible with respect to the substantive issue of whether petitioner had unreported income from narcotics sales, it was admissible to show how respondent arrived at his determination set forth in the statutory notice. Respondent is not required to base his determination solely on admissible evidence. *Anthony Delsanter,* 28 T.C. 845, 858 (1957); *Terry C. Rosano,* 46 T.C. 681, 687 (1966); *Efrain T. Suarez,* 58 T.C. 792, 817 (1972) (concurring opinion). We are still of the opinion that the determination letter was not arbitrary or unreasonable.

In view of our refusal to shift the burden of proof to respondent, the burden remains with petitioner. Rule 142, Tax Court Rules of Practice and Procedure. Petitioner's mother testified that she and her husband paid their son $370 in wages and made him cash gifts of approximately $1,600 in 1972. They also made him gifts of groceries. Petitioner elected not to take the stand and testify in his own behalf, which helps explain the meager record in this case. We conclude from the record before us that petitioner has not overcome the presumption of correctness of the statutory notice with respect to the omitted income from the sales of heroin. "The presumption in favor of the Commissioner is a procedural device which requires the taxpayer to come forward with enough evidence to support a finding contrary to the Commissioner's determination." *Rockwell v. Commissioner,* 512 F.2d 882, 885 (9th Cir. 1975), affg. a Memorandum Opinion of this Court, cert. denied 423 U.S. 1015 (1975). Petitioner has failed to do this.

Petitioner asserts that the Court's refusal to order respondent to disclose the names of two confidential informers who provided data upon which the deficiency was based deprived petitioner of a fair trial. We disagree.

Trials before this Court are conducted in accordance with the rules of evidence used by the United States District Court for the District of Columbia. Sec. 7453; Rule 143(a), Tax Court Rules of Practice and Procedure. That District Court uses the Federal Rules of Evidence. Section 501 thereof provides in part:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person,

government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. * * *

The Government's privilege not to disclose the identity of its informers existed at common law. Wigmore, Evidence, sec. 2374 (McNaughton ed. 1961).[2] The Supreme Court, in *Roviaro v. United States,* explained the nature and reach of this privilege as follows (353 U.S. 53, 59–62 (1957)):

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. * * * The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.
>
> The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.
>
> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. * * *
>
> * * *
>
> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.

---

[2] That section provides in part as follows:

A genuine privilege * * * must be recognized for the *identity of persons supplying the government with information concerning the commission of crimes.* Communications of this kind ought to receive encouragement. They are discouraged if the informer's identity is disclosed. Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he will usually condition his cooperation on an assurance of anonymity—to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him. The government also has an interest in nondisclosure of the identity of its informers. Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship. [Fn. refs. omitted.]

Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. [Fn. refs. omitted.]

The privilege has been invoked in at least two criminal tax cases. *Escobar v. United States,* 388 F.2d 661 (5th Cir. 1967) (filing false income tax returns); *United States v. Hanna,* 341 F.2d 906 (6th Cir. 1965) (nonfiling of Federal excise tax returns). In each case the Court found that the taxpayer had failed to show a compelling reason for disclosure of the informer's identity.[3]

Courts have also recognized the informer's privilege in civil cases where the same conflicting policy considerations were at stake. *Westinghouse Electric Corp. v. City of Burlington, Vermont,* 351 F.2d 762, 769 (D.C. Cir. 1965) (antitrust action); *Wirtz v. Continental Finance & Loan Co. of West End,* 326 F.2d 561 (5th Cir. 1964) (Fair Labor Standards Act case); *Mitchell v. Roma,* 265 F.2d 633 (3d Cir. 1959) (Fair Labor Standards Act case); *Timken Roller Bearing Co. v. United States,* 38 F.R.D. 57, 65–66 (D.C. Ohio 1964) (tax refund suit). See Annot., 8 A.L.R. Fed. 6 (1971). In applying the *Roviaro* test, wide discretion is vested in the trial court to achieve the proper balance between the conflicting interests of the Government and the individual. *Wirtz v. Rosenthal,* 388 F.2d 290, 291 (9th Cir. 1967) (a Fair Labor Standards Act case). In this case an in camera inspection of the informers' statements to the Internal Revenue Service was made by the Court. See *United States v. Rawlinson,* 487 F.2d 5, 7 (9th Cir. 1973); Annot., 8 A.L.R. Fed. 6 (1971). We concluded that the informers' statements would not aid petitioner and that they would necessarily reveal the identity of the informers. The public interest in preserving the anonymity of the informers to keep the flow of information going to the Government far outweighed any interest petitioner could have in knowing their identity.

---

[3] In *Escobar v. United States,* 388 F.2d 661, 664 (5th Cir. 1967), the court states: "Appellant [taxpayer] fails to make any showing that he was 'prevented from making his defense without knowledge of the informer's identity.' " In *United States v. Hanna,* 341 F.2d 906, 907 (6th Cir. 1965), the court states: "Appellant [taxpayer] has not pointed out in what way he was prejudiced or deprived of a fair trial by the failure to be so advised [of the name of the informer]."

The sole relevance of the informers' statements goes to the threshold question of whether respondent's determination was arbitrary or unreasonable. Our inspection of the statements satisfies us that the determination was not arbitrary or unreasonable. The real issue here is whether petitioner has reported all his income and paid all his taxes, not whether a specific sale of heroin took place at any specific time. The names of the informers are irrelevant to that issue. Petitioner himself is in the best position to present evidence of his taxable income, and this without regard to the accuracy of the informers' statements. We conclude that on these facts petitioner's interest in knowing the identity of the informers is not sufficient to overcome the Government's privilege.[4]

Petitioner also alleges that the Court erred in refusing to order respondent to produce the file reviewed by Revenue Agent Swanson prior to taking the stand and testifying. Petitioner contends that rule 612 of the Federal Rules of Evidence entitled him to see these documents. Rule 612 provides in pertinent part:

if a witness uses a writing to refresh his memory for the purpose of testifying, either—
(1) while testifying, or
(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,

an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

The intent of Congress in establishing rule 612 is set forth in H. Rept. No. 93–650, 93d Cong., 1st Sess. 13 (1973), as follows:

As submitted to Congress, Rule 612 provided that except as set forth in 18 U.S.C. 3500, if a witness uses a writing to refresh his memory for the purpose of testifying, "either before or while testifying," an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness on it, and to introduce in evidence those portions relating to the witness' testimony. The Committee amended the Rule so as

---

[4] Petitioner also asserts that we erred in not permitting his counsel to participate in our in camera inspection. We disagree. The file was neither large nor complex; there was little possibility that we might fail to discover material significant to petitioner. The trial judge has wide discretion in determining whether petitioner's counsel should be permitted to participate in the in camera inspection. We excluded petitioner's counsel in this case. See *United States v. Anderson*, 509 F.2d 724 (9th Cir. 1975), cert. denied 420 U.S. 910 (1975).

still to require the production of writings used by a witness while testifying, but to render the production of writings used by a witness to refresh his memory before testifying discretionary with the court in the interests of justice, as is the case under existing federal law. See *Goldman v. United States*, 316 U.S. 129 (1942). The Committee considered that permitting an adverse party to require the production of writings used before testifying could result in fishing expeditions among a multitude of papers which a witness may have used in preparing for trial.

The Committee intends that nothing in the Rule be construed as barring the assertion of a privilege with respect to writings used by a witness to refresh his memory.

In view of the foregoing, it is clear that the Court has wide discretion in this area and that the informer's privilege would apply as well. The Court examined Swanson's work file in camera and found nothing that would help petitioner in his defense. As noted above, our examination of the informers' statements revealed that material concerning the informers' identities was so intertwined with the remaining information that it was not possible to reveal one without also revealing the other. We also note that petitioner has not denied that he had access to the revenue agent's report, which was one of the papers in Swanson's file. The remaining contents of Swanson's work file, his workpapers, contained very little information that was not otherwise in the statutory notice or confirmed in the informers' statements. Under the circumstances, the Court has not abused its discretion in refusing to petitioner the right to review Revenue Agent Swanson's file.

It is unnecessary for the Court to consider petitioner's additional argument concerning the attorney-client privilege since the testimony of Donald Lamp objected to by petitioner need not be considered in deciding this case. Respondent's questions have little if any bearing on the issues to be decided, and Lamp's answers contained almost no information.

We recognize the apparent harshness of basing our conclusion on respondent's determination alone, in the absence of any admissible supporting evidence, while refusing to allow petitioner to inquire into the basis of that determination. It may well be that petitioner was effectively precluded from putting on direct evidence of his income by fear of self-incrimination if he did so. However, even at that, petitioner was not powerless to rebut respondent's determination if it were indeed erroneous. For example, without testifying

regarding his illegal income sources, petitioner could have readily demonstrated by schedules of personal expenditures and yearend net worth that he could not have had income in the amount determined by respondent, if such had been the case. His failure even to attempt any such showing reinforces us in our conclusion that respondent's determination must be upheld.

The next issue is whether petitioner's failure to file a timely income tax return was due to willful neglect and was not due to reasonable cause. Petitioner filed his 1972 return on September 4, 1973. Petitioner has given no reason for his late filing. Section 6651(a) imposes an addition to tax for failure to file an income tax return on the prescribed filing date unless it is shown that such failure was due to reasonable cause and not due to willful neglect. Petitioner, on whom the burden of proof rests, has presented no evidence on this point. *Conlorez Corp.*, 51 T.C. 467, 473–474 (1968). We therefore hold for respondent.

The final issue is whether petitioner was engaged in the trade or business of selling narcotics in 1972 as a self-employed individual. If so, his earnings from such trade or business are subject to the self-employment tax.

The tax on self-employment income is part of the income tax and is subject to the jurisdiction of the Tax Court to the same extent and in the same manner as the income tax. Sec. 1.1401–1(a), Income Tax Regs. Respondent has taken the position that the tax is imposed on individuals engaged in illegal activities where they otherwise qualify. Rev. Rul. 60–77, 1960–1 C.B. 386. The burden is on the taxpayer to show that he is not liable for the tax. Rule 142(a), Tax Court Rules of Practice and Procedure. Since petitioner offered no proof on this issue, respondent's determination is presumed to be correct. Accordingly, petitioner is liable for the self-employment tax on his self-employment income for 1972.

*Decision will be entered for the respondent.*