LEONARD JACKSON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8667–71.     Filed November 28, 1979.

*Alvin Geller*, for the petitioner.
*Michael P. Casterton*, for the respondent.

NIMS, *Judge:* Respondent determined a deficiency in petitioner's income tax for the calendar year 1970 of $94,080 and additions thereto under sections 6651(a),[1] 6653(a), and 6654(a) of $23,520, $4,704, and $3,011,[2] respectively.

The only issues presented are whether petitioner received unreported profits of $153,475 from illegal activities in 1970 and whether he is liable for additions to tax.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioner Leonard Jackson maintained his legal residence in New York, N.Y., at the time he filed his petition herein. Petitioner has never filed an income tax return for the taxable year 1970. Petitioner maintained no books or records for 1970.

Petitioner has led a life of crime since his first juvenile offenses at age 11 in 1945. His first conviction on drug-related offenses was for possession of drugs in 1959. On July 29, 1965, petitioner was convicted of unlawfully, willfully, and knowingly receiving, concealing, selling, and facilitating the transportation, concealment, and sale of heroin. *United States v. Jackson*, Crim. No. 63–211 (S.D. N.Y., filed July 29, 1965), affd. by unpublished opinion (2d Cir. 1966). Petitioner was arrested again on July 8, 1971, but this case was dismissed. Later, he was convicted by a jury on December 15, 1972, of conspiracy to unlawfully and knowingly distribute and possess with intent to distribute Schedules I and II narcotic drug-controlled substances in violation of title 21 U.S.C. secs. 812, 841(a)(1), 841 (b)(1)(A), and

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect during the taxable year in issue.

[2]Respondent conceded that the sec. 6654(a) addition to tax should be only $1,128.96. Petitioner made no arguments at trial or on brief relating to the additions to tax aside from his testimony relevant to the unreported income issue, and we must assume that petitioner has rested the resolution of the penalty issues upon our determination of whether he received income from illegal activities.

846. *United States v. Jackson,* Crim. No. 72–940 (S.D. N.Y., filed Dec. 15, 1972). He was serving a 10-year sentence received as a result of this conviction at the time of trial.

Petitioner was released from prison in August 1968 after serving the sentence resulting from the 1965 conviction. He obtained employment with Bethlehem Steel in Hoboken, N.J., but was laid off from the job in late 1969. For 6 to 8 weeks in 1970, he collected unemployment benefits of $50 per week from New York State. Petitioner did not hold any other jobs during the year. He had no savings when he was released from prison in 1968 or when he was laid off from Bethlehem Steel in 1969.

Two reports based upon the following information were prepared and forwarded to the revenue agent auditing petitioner.

In 1971, an informant provided information to a special agent of the Drug Enforcement Administration (hereafter DEA) and to other agents with whom the special agent worked concerning petitioner's alleged drug activities. The informant gave the agents detailed information concerning an organization in Harlem known as "Red Jackson's" which petitioner allegedly headed and which allegedly sold and distributed heroin during a period including November and December 1970. The informant claimed he was a member of petitioner's organization from the summer of 1970 until June or July 1971, when he was arrested by agents of the New York Task Force, a combined effort of DEA agents, New York City Police, and New York State Police, formed to combat narcotics trade in New York City. The DEA special agent who provided the information to the revenue agent in this case was a group supervisor with this force.

The informant told the task force that he was familiar with several "lieutenants" apparently in charge of distributing heroin in petitioner's organization. The informant stated that petitioner was the controller of the organization and that each "lieutenant" had as many as 10 or 11 street distributors. The informant's primary function was to supervise the street distributors of one of the "lieutenants." The informant claimed that the "lieutenant" for whom he distributed sold approximately 500 quarter ounce bags of heroin daily at $50 per bag. The informant also had two or three distributors who worked directly for him. The informant never told the agents that he had seen any of the "lieutenants" give petitioner money. He also did not state

whether petitioner had ever given him heroin or if he had seen petitioner with heroin during 1970. The informant did tell the agents, however, that he had seen petitioner in the cutting mills during 1971.

The revenue agent prepared his report, upon which respondent determined that petitioner realized taxable income for the taxable year 1970 in the amount of $153,474,[3] relying solely upon the two reports and on conversations with the special agent. The information regarding petitioner's alleged involvement in the narcotics ring during November and December 1970 was based entirely on what the informant told the special agents and other agents. The informant did not testify during the trial of this case although a writ of habeas corpus ad testificandum was issued by this Court on June 3, 1976, commanding his presence in order that he might testify.

After the informant was arrested in mid–1971 on drug-related charges, he hoped that by cooperating with the task force he would obtain a lighter sentence. Nonetheless, before his trial, he jumped bail and fled New York. After being rearrested in Detroit, the informant refused to cooperate further. The informant was later convicted of the charges for which he was arrested; however, the special agent believed the information provided him by the informant was credible. Other information provided by the informant resulted in a conviction against a member of petitioner's organization.

## OPINION

Petitioner generally contends that respondent's determination that he received income from illegal activities is erroneous; that the information used by respondent in reconstructing his income was insufficient to establish the correctness of the deficiency, thereby shifting the burden of going forward with the evidence to respondent. Petitioner argues in the alternative that if the

---

[3]Respondent's determination of petitioner's gross sales was based upon the informant's estimate of the amount of heroin distributed by the "lieutenant" for whom he was a supervisor. Although the informant stated that there were three or four "lieutenants," alleged sales by these other "lieutenants" were not included in respondent's recomputation of petitioner's income. On this basis, respondent determined that petitioner's organization sold 500 quarter ounce bags at $50 per bag of heroin (at one-quarter strength) each day during Nov. and Dec. 1970 (a total of 61 days). The cost of the heroin to petitioner was then estimated to be $25,000 per kilogram based upon the task force's experience in undercover operations, and expenses were estimated at $20,000 to $23,000. Thus, gross income for the 61-day period was computed at $175,000: $1,525,000 gross sales, less cost of goods sold at $1,350,000.

burden of going forward with the evidence rests upon him, he has met his burden of proof.

Respondent contends that the notice of deficiency is entitled to the ordinary presumption of correctness. Respondent's position is that the only question presented is whether petitioner has met his burden of proof, not whether respondent has introduced any evidence of petitioner's illegal activities. Respondent then maintains that petitioner's testimony, which was the only evidence offered to support petitioner's position, was not credible, and that petitioner has, therefore, failed to carry his burden of proof.

Preliminarily, some attention must be given to certain items which make up the meager record in this case:

*The deficiency notice.*—Respondent's determination was explained as follows:

EXPLANATION OF ADJUSTMENTS

(a) It is determined that you realized taxable income in the amount of $153,475.00, computed in detail below, from your activity as a dealer in narcotics. You did not report this income for Federal income tax purposes.

| | | |
|---|---:|---:|
| Gross income from heroin sales | | $1,525,000 |
| Cost of the heroin sold | | 1,350,000 |
| Gross profit | | 175,000 |
| Allowable expenses as determined: | | |
| Salaries of distributors | $8,000 | |
| Salaries of millworkers | 4,000 | |
| Equipment | 1,025 | |
| Glassine envelopes | 150 | |
| Rent | 2,700 | |
| Transportation | 1,000 | |
| Miscellaneous | 4,650 | 21,525 |
| Net profit from this activity | | 153,475 |

(b) You are allowed one exemption, for yourself, as provided by Code section 151.

(c) You are allowed the standard deduction provided by Code section 141.

From the foregoing, it will be observed that, on its face, the basis of the determination was set forth with substantial particularity but, as we will indicate subsequently, that proved to be deceptive.

The deficiency notice also contains the statement that "An

assessment of the deficiency and additions to the tax mentioned has been made to the extent of $60,007.39 under the provisions of the internal revenue laws applicable to jeopardy assessments."

*Stipulation of facts.*—The parties stipulated copies of the judgments reflecting petitioner's criminal convictions in 1965 and 1972. They also stipulated that petitioner was a resident of New York City at the time the petition herein was filed, that he filed no tax return for 1970, and that respondent determined that petitioner realized taxable income in the amount of $151,850 for the taxable year December 31, 1970, from petitioner's activities as a dealer in narcotics, and further determined a tax deficiency plus penalties as indicated above. Nothing further of substance was stipulated.

*Petitioner's evidence.*—Petitioner's evidence consisted of the foregoing stipulated facts plus his own uncorroborated testimony that his only source of funds during 1970 was unemployment compensation in the amount of $50 per week and $1,000, which he borrowed from Manufacturer's Hanover Bank in New York. He denied categorically dealing in or using narcotics, including heroin, during 1970. He stated that he arranged apartments for certain women to live in at their own expense, and that he lived with five or six women during that year. He frequented Freddie's Bar, located in his childhood neighborhood at 119th Street at Eighth Avenue in New York, on an almost daily basis and played the numbers game relentlessly.

Notwithstanding the petitioner's almost total lack of funds or source of income in 1970 (if his testimony is to be believed), the Government managed to seize $54,715 in cash plus an Eldorado Cadillac at the time of petitioner's arrest on July 8, 1971, on the suspicion of dealing in narcotics, according to the opening statement of respondent's counsel. The record contains absolutely no explanation of the source of these funds or property, and, in fact, respondent's counsel categorically stated that "respondent maintains that the cash seized in 1971 has no bearing at all on the issue before this Court in the 1970 year."

On balance, petitioner's testimony can only be received with the profoundest skepticism as to its truthfulness. Since his only attempt to meet his burden of challenging respondent's determination consisted of self-serving denials of his involvement, we do

not give and need not give credence to his testimony. *Gerardo v. Commissioner*, 552 F.2d 549 (3d Cir. 1977).

*Respondent's evidence.*—Respondent's evidence consisted solely of the testimony of the revenue agent assigned to perform an audit for the year 1970 and that of a supervisory special agent of the United States Department of Justice, Drug Enforcement Administration. Petitioner's counsel objected to the admissibility of the entire testimony of these two witnesses on the grounds of hearsay. Respondent's counsel stated in response to these objections that "we're not offering it for the truth of the cases, but just for purposes of the reasonableness of the statutory notice, that it is not arbitrary and capricious."

———————

Since Jackson's testimony lacks credibility, and he produced no other evidence, under ordinary circumstances, his evidence would be insufficient to overcome the usual presumption of correctness of respondent's determination. It is axiomatic that, unless otherwise provided by law, the Commissioner's deficiency is presumed to be correct. The presumption is procedural and transfers to the taxpayer the burden of going forward with the evidence to show that the Commissioner's determination is incorrect. *Barnes v. Commissioner*, 408 F.2d 65 (7th Cir. 1969).

In asking this Court to determine whether a notice of deficiency is arbitrary, the petitioner is, in essence, asking the Court to go behind the notice of deficiency. As a general rule, this Court will not look behind a notice of deficiency to examine the evidence used or the propriety of the Commissioner's motives or administrative policy or procedure in making the determination. *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974); *Suarez v. Commissioner*, 58 T.C. 792, 813 (1972). As we observed in *Rosano v. Commissioner*, 46 T.C. 681, 687 (1966), "the Commissioner's determination may often rest upon hearsay or other inadmissible evidence, and we know of no rule of law calling for a review of the materials that were before the Commissioner in order to ascertain whether he relied upon improper evidence." The rationale for this rule is that a trial before the Tax Court is a proceeding de novo; our determination of a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level. *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. at 328.

This Court has on rare occasions recognized a possible exception to this rule and has looked behind the notice of deficiency in cases involving unreported income where the respondent introduced no substantive evidence but rested on the presumption of correctness and the petitioner challenged the notice of deficiency on the grounds that it was arbitrary. *Weimerskirch v. Commissioner*, 67 T.C. 672 (1977), revd. 596 F.2d 358 (9th Cir. 1979). See *Human Engineering Institute v. Commissioner*, 61 T.C. 61, 66 (1973), appeal dismissed (6th Cir., Apr. 1, 1975), cert. denied 423 U.S. 860 (1975). This is one of those rare occasions where the exception is applicable and, for reasons hereafter stated, we find the respondent's determination to be arbitrary and excessive within the rule of *Helvering v. Taylor*, 293 U.S. 507 (1935), and its progeny, the effect being to shift to the respondent the burden of coming forward with evidence to establish the existence and amount of any deficiency. *Suarez v. Commissioner*, 58 T.C. at 814. This, respondent has failed to do.

In the *Gerardo* case, the Court of Appeals for the Third Circuit, in affirming in part and reversing in part a Memorandum Decision of this Court (T.C. Memo. 1975-341), found, in effect, that part of respondent's determination in that case was arbitrary, i.e., without rational foundation in fact and based upon unsupportable assumptions. The situation in that case was somewhat analogous to the one before us.

The Tax Court in *Gerardo* found as a fact that the taxpayer derived unreported income from his involvement in a lottery operation for the period from April 4, 1966, through February 3, 1967. The Court of Appeals found ample support for our finding of substantiation in the record of the taxpayer's wagering activity for the period from August 5, 1966, through February 3, 1967 (the "approved period").

However, the Court of Appeals expressed concern that "no evidence appears in the record which links Gerardo to the gambling operation during the period April 4, 1966, through August 5, 1966," and, to the extent that the Government based its deficiency determination on alleged gambling activity during such period, the determination was held arbitrary.

As to the approved period, the Commissioner's determination was based in part upon the Government agent's personal observation of the taxpayer's operation, his activities as an undercover agent, and his conversations with a coconspirator of

the taxpayer during this period. Similarly, in *Avery v. Commissioner*, 574 F.2d 467 (9th Cir. 1978), where a DEA agent testified that he, himself, bought heroin 3 times from the taxpayer, the Government's estimate of the extent of the taxpayer's heroin sales was held to be rationally based and presumptively correct.

The foregoing is in sharp contrast to the situation before us, where neither Government agent could testify as to any direct contact with the taxpayer nor his activities during the period in question, and the Government presented no other evidence as to the petitioner's involvement with heroin sales during such period. Paraphrasing the language of the Circuit Court in *Gerardo*, no evidence appears in the record which links Jackson to any narcotics operation during 1970.

In *Pizzarello v. United States*, 408 F.2d 579 (2d Cir. 1969), cert. denied 396 U.S. 986 (1969), the Second Circuit found a jeopardy assessment to be excessive, arbitrary, and without factual foundation where no rational foundation for the assessment had been established. Although *Pizzarello* was an action to enjoin a levy under a jeopardy assessment, the Court recognized the presumption of validity of a tax assessment and the burden on the taxpayer to prove invalidity, citing *Helvering v. Taylor* for support, but stated that "Such a presumption is not evidence and disappears upon the introduction of evidence to overcome it." The Second Circuit stated that the taxpayer's gambling income for 3 days was insufficient, without other evidence, to permit an inference that the taxpayer operated as a gambler for 5 years. See also *Carson v. United States*, 560 F.2d 693 (5th Cir. 1977).

In the case before us, the evidence which causes the presumption of correctness to disappear was introduced by the Government itself although, of course, such was not its intended purpose. For example, it is clear that the individual who provided the critical "evidence" to the Government agent falls far short of being a respectable third party citizen-informant. Not only had he just been arrested for narcotics violations at the time he gave his statement, thereby giving rise to the reasonable inference that any of his statements were made with the hope of currying favor with the authorities, but he later jumped bail even though he was working as an informant at that time.

Any further doubts one may have regarding the informant's credibility could only be exacerbated by his actions after he was subpoenaed by respondent to testify in this case: He flatly

refused to cooperate. In short, the informant's credibility was highly suspect, to say the least. The testimony by the DEA agent that he believed the informant to be credible is not sufficient. Furthermore, the trier of the facts found that the informant never told the agents that he had seen any of the "lieutenants" give petitioner money. He, the informant, also did not state whether petitioner had ever given him heroin during 1970, the year in question.

Unquestionably, as respondent correctly notes, in a case such as this, involving an alleged illegal enterprise where the taxpayer has filed no returns and kept no records, respondent is given great latitude in determining the method to be utilized in determining income. The projection method used in this case is one method which has received widespread judicial approval.[4] Nevertheless, the elaborate construct set out in the deficiency notice, based solely as it was on a secondhand report of peripheral statements made by an unreliable informant, turns out to be sheer gossamer. We consequently find respondent's determination arbitrary and excessive.

What the result might have been had the Government offered *no* evidence we are not prepared to say. Suffice it to say, however, that having presented the testimony of the two agents to demonstrate the basis of the determination, and having by these witnesses convinced us that the determination was arbitrary, the Government is elevated on its own powder charge and we are required to decide nothing beyond our present finding that the determination was arbitrary. Under this posture of the case, the burden is no longer on petitioner to show that he owes nothing, or the correct amount, if any, that he does owe. *Helvering v. Taylor, supra.* And, as previously noted, respondent has introduced no evidence to support the deficiency determination.

Recent case law supports the above result. In *United States v. Janis*, 428 U.S. 433 (1976), a wagering tax case, the Supreme

---

[4]See, e.g., *Gerardo v. Commissioner*, 552 F.2d 549 (3d Cir. 1977); *Gordon v. Commissioner*, 572 F.2d 193 (9th Cir. 1977), cert. denied 435 U.S. 924 (1978), affg. on this issue and revg. on another issue 63 T.C. 51 (1974); *Mitchell v. Commissioner*, 416 F.2d 101 (7th Cir. 1969), affg. T.C. Memo. 1968–137; *Fiorella v. Commissioner*, 361 F.2d 326 (5th Cir. 1966), affg. T.C. Memo. 1964–275; *Pinder v. United States*, 330 F.2d 119 (5th Cir. 1964); *O'Neill v. United States*, 198 F. Supp. 367 (E.D. N.Y. 1961); *Ches v. Commissioner*, T.C. Memo. 1976–387, affd. in an unpublished opinion (4th Cir. 1978); *Fox v. Commissioner*, 61 T.C. 704 (1974); *Delsanter v. Commissioner*, 28 T.C. 845 (1957), revd. on another issue 267 F.2d 39 (6th Cir. 1959).

Court was required to decide whether evidence obtained by State law enforcement officers in violation of the taxpayer's rights under the Fourth Amendment could be introduced by the Government in a civil tax case. Without such evidence, the assessment would be, in the Court's words, "naked and without any foundation." The Court stated that without the illegal evidence "The determination of tax due then may be one 'without rational foundation and excessive' and not properly subject to the usual rule with respect to the burden of proof in tax cases," citing *Helvering v. Taylor, supra*. While the Supreme Court's dictum regarding the effect of the "naked" assessment was not dispositive of the primary issue (i.e., the Fourth Amendment question), nevertheless, it is strongly indicative of the Court's inclinations on this issue.

In *Weimerskirch* (decided by this Court prior to the Supreme Court's *Janis* decision), the revenue agent obtained the factual basis for his computation of omitted income attributable to sales of heroin from statements of two confidential informers and information from the Drug Enforcement Administration of the Department of Justice, the Yakima Police Department, and the Spokane Police Department. The trial judge examined, in camera, the revenue agent's work file and the informers' statements and, while refusing to permit the disclosure of this material to the taxpayer, ruled that respondent's determination was not arbitrary and unreasonable.

The Ninth Circuit reversed our *Weimerskirch* decision, relying substantially on the Supreme Court's dictum in *Janis*, and holding that "A deficiency determination that is not supported by the proper foundation of substantive evidence is clearly arbitrary and erroneous." With deference to the Circuit Court, we would find practical difficulty in applying such a broadly stated rule. In any event, since we find for the petitioner on the narrow grounds that respondent's own evidence convinces us that his determination was arbitrary, we may leave for another

day the exploration of the procedural parameters of the "naked" assessment rule.

Decision will be entered under Rule 155.

Reviewed by the Court.

IRWIN, J., concurring: As the trier of facts in this case, I agree with the majority's findings of fact and in its conclusion that petitioner was not a credible witness. I also concur in the result reached by the majority.

QUEALY, J., dissenting: In my opinion, the record in this case fails to support a finding that the notice of deficiency was "arbitrary and capricious." Respondent had reasonable cause, based upon information derived from informants, that the petitioner was engaged in the distribution and sale of illegal drugs during November and December of 1970. If true, the resulting income is subject to tax. In the absence of any records, it was incumbent upon the respondent to proceed upon the basis of the best information available to him. To do so, regardless whether the method adopted by the respondent can be relied upon with any degree of exactitude, does not mean that it was "arbitrary and capricious." *Weimerskirch v. Commissioner*, 67 T.C. 672 (1977), revd. 596 F.2d 358 (9th Cir. 1979).

The petitioner had an opportunity before this Court to prove that he was not, in fact, engaged in the sale of narcotics during the period in question. Admittedly, proof of a negative is difficult. Petitioner relied solely on his self-serving denial. The trial judge in this case did not believe his testimony. It may be that if petitioner had also presented evidence to show what activities he was engaged in during the period in question, greater credibility might have been given to his testimony.

If the income from illegal activities, and particularly the sale of narcotics, is to be taxed, it must be recognized that determination by the respondent of the amount to be taxed will not be derived from books and records, bank deposits, or other more conventional sources. Drug dealers deal strictly in cash and do

not keep books and records. In determining the amount of income derived from such activities, respondent can only be expected to act on the basis of whatever information may be available to him. The fact that respondent is unable to determine with exactitude the resulting income to be taxed does not make his action "arbitrary and capricious."

While I recognize that my views may differ from those expressed by the Ninth Circuit in reversing our decision in the *Weimerskirch* case, I am not prepared to follow the reversal of the Tax Court in that case.

FEATHERSTON, FAY, and DAWSON, JJ., agree with this dissenting opinion.