FRANCISCO SOLIMENE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Solimene v. Commissioner
Docket No. 1502-74
United States Tax Court
T.C. Memo 1982-370; 1982 Tax Ct. Memo LEXIS 373; 44 T.C.M. (CCH) 321; T.C.M. (RIA) 82370; June 30, 1982
Moe D. Karash, for the petitioner. Jack H. Klinghoffer , for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: * Respondent determined deficiencies in petitioner's Federal income taxes of $ 265,077.50 for the calendar year 1971, and additions to tax under sections 6651(a), 6653(a) and 6654(a) in the amounts of $ 66,269.38, $ 13,253.88, and $ 8,482.48, respectively. [1] The primary issue is whether the respondent acted arbitrarily when he determined that petitioner had unreported income of $ 400,000 in 1971 in payment for services in connection with the importation of large quantities of heroin into the United States. Other issues presented are whether petitioner is liable for additions to tax: (1) under section 6651(a) for failure to file, (2) under section 6653(a) for negligent underpayment of income tax, and (3) under section 6654(a) for failure to make estimated tax payments. *375 FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time Francisco Solimene ("petitioner") filed his petition, he maintained his legal residence in New York City. During 1971, petitioner had no visible means of support other than from his wife's employment income, which was between $ 10,000 and $ 12,000 annually. Petitioner did not file a Federal income tax return for calendar year 1971. Documentary evidence, submitted at trial as a joint exhibit, [2] establishes that on July 8, 1971, a routine customs inspection of four suitcases and an attache' case belonging to Rafael Richards, Jr., resulted in the discovery of 155 pounds of heroin. A subsequent investigation resulted in the arrest of numerous persons, including Americo Altamirano and Francisco Solimene. The latter, petitioner herein, was arrested in Queens, New York, in December, 1971, by an agent of the United States Bureau of Customs. At the time of his arrest, petitioner had approximately $ 5,000 in cash on his person, which was apparently seized by the arresting officers. Petitioner also had in his apartment (searched, pursuant to warrant, by the agents) at the time of his arrest *376 evidence indicating the existence of a Swiss bank account. Pursuant to a search warrant, customs agents on or about December 10, 1971, searched and seized $ 87,000 found in a bank safety deposit box belonging to petitioner's wife. On December 16, 1971, petitioner was indicted for conspiracy to import this same heroin into the United States. On February 1, 1972, petitioner was advised by respondent that his taxable year 1971 was terminated as of December 9, 1971, under section 6851, and that an income tax of $ 92,034.90 for this period had been determined against him. He was notified to file a return for this period, and was also advised that he was required to file a tax return for the full tax year 1971. By notice dated February 2, 1971, petitioner was informed of the assessment of said tax for the period January 1, 1971 to December 9, 1971, and that the tax imposed was immediately due. On February 3, 1972, a revenue officer for the Internal Revenue Service served the United States Bureau of Customs with a Notice of Levy in the amount of said tax, plus interest *377 and fees. The record does not indicate whether any of the money seized by the United States Bureau of Customs was turned over to the Internal Revenue Service. On March 22, 1972, pursuant to the Grand Jury indictment, petitioner was convicted in the United States District Court for the Eastern District of New York on one count of conspiracy to import said 155 pounds of heroin into the United States, after a jury trial. On May 19, 1972, petitioner was sentenced to imprisonment for 15 years. [3]
Americo Altamirano, named as a co-conspirator but not indicted in petitioner's criminal case, told William McMullan, an agent for the United States Bureau of Customs, that petitioner: (1) had been in the narcotics trade for some time, (2) was a part of a distribution network responsible for the importation of some 200 kilograms of heroin within a three-month period during 1971, (3) was a middle-man in this organization and was paid approximately $ 2,000 per kilogram for arranging the delivery between the importers *378 and the American wholesalers in New York, and (4) was paid for his services. Altamirano was separately indicted and convicted on narcotics offenses apparently related to some or all of the transactions in which petitioner was implicated. After his arrest and conviction, Mr. Altamirano cooperated with the United States Bureau of Customs, and testified at petitioner's criminal trial as to petitioner's narcotics dealings. [4] Mr. Altamirano was not promised anything for giving testimony against petitioner. At the time of the trial of the present case, the whereabouts of this witness was unknown. Pursuant to Federal Rules of Evidence, section 804(b)(5), petitioner's attorney was advised prior to trial that Mr. McMullan, currently employed by the United States Drug Enforcement Administration, would testify that Mr. Altamirano told him that during the months of May, June and July, 1971, petitioner made $ 400,000 from the business of narcotics; and that Mr. McMullan would also testify that he was informed that petitioner was paid $ 2,000 per kilogram for arranging the transportation of 200 kilograms of heroin into the United States. McMullan so testified herein. *379 In early 1972, the United States Bureau of Customs, through the American Embassy in Switzerland, contacted the Credit Suisse Bank with regard to petitioner's maintaining a bank account there. By letter dated April 11, 1972, the Swiss Government informed the United States Bureau of Narcotics and Dangerous Drugs (a branch of the United States Department of Justice), that petitioner maintained a bank account with the Union Bank of Switzerland, in Zurich. The Swiss Government determined that deposits totalling $ 104,931.73 were deposited in petitioner's bank account between November 10, 1971, and November 22, 1971. The funds in this bank account were apparently frozen by the Swiss Government at the time of this investigation. On December 14, 1973, two documents labelled as statutory notices of deficiency were sent to the petitioner. The statutory notice determining a deficiency of tax of $ 265,077.50 is the statutory notice upon which the present case is based. The other notice of the same date, determining a higher deficiency, represented a preliminary draft of a statutory notice, which was rejected by a reviewing officer within the Internal Revenue Service before issuance. It *380 was sent to petitioner through clerical error and is not relied on herein by respondent. Petitioner was so advised by respondent's answer herein. The respondent's determination that petitioner received $ 400,000 in unreported income was based on the following information: first, the $ 400,000 figure was based in part upon information, supplied to the respondent by the Bureau of Customs, that informants could establish that petitioner received $ 2,000 per kilogram for arranging for the transportation and delivery of 200 kilograms of heroin into the New York City area during 1971; second, the $ 400,000 figure found in the notice of deficiency was based in part on information obtained by the respondent from petitioner's conviction for conspiracy to import heroin into the United States; and finally, the $ 400,000 figure found in respondent's notice of deficiency was based in part on the large amounts of unexplained funds found on petitioner's person, in a Swiss bank account maintained by petitioner, and in a bank safety deposit box in the United States in the name of petitioner's wife, who allegedly disclaimed any knowledge with respect to the funds, all such information having been *381 supplied to respondent by the Bureau of Customs. Respondent's determination made in his statutory notice of deficiency was not arbitrary, capricious and excessive, but was based on rational grounds, in view of the information then in respondent's hands. OPINION Petitioner argues that respondent's determination that he earned $ 400,000 in unreported income in 1971 is arbitrary, and that the information used by respondent in reconstructing petitioner's income is insufficient to establish the correctness of the deficiency. It is petitioner's contention that respondent's failure to establish the correctness of the deficiency shifts the burden of proof to the respondent. Respondent argues that the statutory notice of deficiency is entitled to the customary presumption of correctness. As such, it is the respondent's assertion that petitioner has not met his burden of proof and thus the determination made by the respondent must stand. Ordinarily, the statutory notice of deficiency carries with it a presumption of correctness which places the burden on the petitioner to show that respondent's *382 determination is erroneous. Rule 142, Tax Court Rules of Practice and Procedure; Welch v. Helvering, 290 U.S. 111 (1933). A preliminary showing by petitioner that respondent's determination is arbitrary, excessive and without foundation, however, will shift the burden of going forward with the evidence to the respondent. Helvering v. Taylor, 293 U.S. 507 (1935). [5]
*383 In the instant case, petitioner is asking this Court to find that respondent's statutory notice of deficiency is arbitrary and excessive. In order for the Court to make this determination, it must look behind the statutory notice. Generally, the Court will not honor such a request. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). In a case involving unreported income from a specified source, an exception to this established rule exists, at least in situations where the taxpayer is engaged in illegal activities, such as dealing in narcotics or gambling, [6] when the respondent relies solely on the presumption of correctness and fails to introduce evidence that would establish a nexus between petitioner and the activity that respondent asserts generated the unreported income. Suarez v. United States, 582 F.2d 1007, 1010 n. 3 (5th Cir. 1978); Llorente v. Commissioner, 649 F.2d 152 (2d Cir. 1981); Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672; Jackson v. Commissioner, 73 T.C. 394 (1979). *384 Petitioner argues that the exception rather than the general rule is applicable to the facts presented to us in this case. It is petitioner's contention that Weimerskirch v. Commissioner, supra, and Jackson v. Commissioner, supra, control the outcome of this controversy since respondent has failed to introduce any admissible evidence linking petitioner with unreported income that was allegedly generated by petitioner while engaged in illegal drug activities. Further, petitioner contends that respondent's determination is arbitrary and without foundation since respondent vacillated between various theories and amounts of deficiencies before arriving at his final determination. Petitioner asserts that the arbitrary nature of the deficiency is evidenced by the fact the respondent not only made an original assessment (based upon early termination of petitioner's tax year), and a subsequent examination report, but also issued two statutory notices of deficiency both dated December 14, 1973, each of which showed different amounts of tax due. Finally, petitioner argues that there was no admissible evidence introduced at trial that would support *385 the computation used by respondent to arrive at the $ 400,000 of unreported income found in respondent's final notice of deficiency. Respondent, on the other hand, asserts that the general rule should be applied, thus precluding us from looking behind the notice of deficiency. Respondent argues that both Weimerskirch v. Commissioner, supra, and Jackson v. Commissioner, supra, are distinguishable and not controlling law for purposes of this case. Further, respondent contends that petitioner was advised of the inadvertent mailing of the original draft of the notice of deficiency in respondent's answer, and, therefore, it is inappropriate for petitioner to argue that the first short-year assessment, the examination report, and the original draft of the statutory notice, establish the arbitrary nature of the respondent's determination. Finally, respondent asserts that there is adequate basis to support the methodology utilized by the respondent in computing petitioner's gross income. Even accepting, arguendo, that in this case, the exception to the general rule applies, and that, petitioner having denied under oath and on the witness stand *386 any connection with the drug business, and the receipt of any income therefrom, the burden of going forward with the evidence shifts, so that respondent should be required to show some basis, supported by evidence, whether direct or circumstantial, for a connection between petitioner and the activity allegedly producing the unreported income, as well as the amount thereof, which respondent has attributed to petitioner, examination of the record in this case satisfies us that respondent has satisfied these requirements. I Petitioner's assertion that respondent's determination is arbitrary and excessive, thus requiring this Court to look behind the notice, can only be based on the position that no evidence, either documentary or testimonial, was introduced by respondent linking the taxpayer to the charged activity. Weimerskirch v. Commissioner, supra. In the instant case it cannot be reasonably argued that respondent arbitrarily placed the petitioner in the drug business. Documentary evidence, submitted as a joint exhibit and petitioner's own exhibit, establishes that petitioner was indicted and convicted of the crime of conspiracy to import heroin into *387 the United States in 1971, the year in issue herein. Petitioner's reliance on our decisions in Jackson, supra, and the decision of the Court of Appeals in Weimerskirch, supra, is thus misplaced. The deficiency in Jackson was premised upon respondent's conclusion that the taxpayer was in the drug business. Yet at trial, respondent failed to establish this crucial fact. [7] In Weimerskirch, the notice of deficiency was based upon statements of unidentified informers and information supplied by law enforcement agencies. There was no direct evidence linking the petitioner to the drug business. [8] These decisions, therefore, are clearly distinguishable. In Llorente v. Commissioner, supra, the United States Court of Appeals for the Second Circuit reversed our holding that the evidence (1) of petitioner's knowledge of pending drug shipments, (2) his inspection of six kilos of cocaine, and (3) his indictment and subsequent guilty plea to a lesser *388 charge of attempted conspiracy was sufficient to demonstrate that the Commissioner had not arbitrarily placed the petitioner in the drug business. [9] The Court held that Llorente's indictment for conspiracy and guilty plea to a charge of attempted conspiracy to criminally possess a controlled substance did nothing more than place him on the fringes of illegal activity. [10] Further, the Court found that testimony offered at trial by a witness for the Commissioner did not establish that Llorente had inspected a particular shipment of cocaine, or that he had participated in the sale of controlled substance. [11] The Commissioner's assessment of income tax liability, therefore, lacked sufficient evidentiary support to be sustained. [12]
In the instant case, there is direct proof linking petitioner to the activity allegedly producing *389 the unreported income in the year before us. Moreover, in Llorente, supra, the taxpayer had only been convicted of attempted conspiracy to possess a controlled substance -- a point which the Second Circuit Court of Appeals considered significant. See 649 F.2d at 152. This is in sharp contrast to the situation herein, where petitioner was convicted of conspiracy to import approximately 155 pounds of heroin into the United States. The 155 pounds of heroin was seized by the United States Bureau of Customs, and was the basis of the indictment and conviction rendered against the petitioner. The information supplied by the informant, Americo Altamirano, was not needed to establish petitioner's involvement in the drug trade, for petitioner's conviction is sufficient for that purpose. Even under a reading most favorable to the taxpayer of the Circuit Courts' opinions in Llorente and Weimerskirch and this Court's Opinion in Jackson, supra, we think that respondent has met his burden.[13] The proof in the present record is ample. *390 As to the way in which respondent computed petitioner's alleged unreported income, petitioner complains that the methodology utilized by respondent to compute petitioner's unreported income is not supported by any admissible evidence submitted at trial. It is petitioner's contention that this also indicated the arbitrary nature of respondent's determination. We disagree. Ample evidence was introduced at trial to establish the rationale or method utilized to compute petitioner's unreported income. The fact that the information used in computing petitioner's unreported income was hearsay does not diminish the reasonableness of respondent's method of calculation. It is well established that a statutory notice may be based in whole or in part upon inadmissible evidence. Rosano v. Commissioner, 46 T.C. 681, 687 (1966); Suarez v. Commissioner, 58 T.C. 792, 813 (1972), 61 T.C. 841 (1974); (appeal dismissed 5th Cir. 1974).[14] While hearsay evidence may be inadmissible as substantive evidence, such evidence is hearsay only when offered to prove the matter *391 asserted. Rule 801(c), Federal Rules of Evidence. Accordingly, such evidence is admissible when offered not for the truth of the matter asserted, but to prove that the respondent had not acted arbitrarily in arriving at a particular deficiency. Avery v. Commissioner, 574 F.2d 467, 468 (9th Cir. 1978), affg. a Memorandum Opinion of this Court. The Commissioner is given great latitude in reconstructing income. Any reasonable means utilized by the respondent to compute unreported income is acceptable especially in cases involving an illegal enterprise where the petitioner has failed to file a *392 return and to keep adequate records. United States v. Johnson, 319 U.S. 503, 517-518 (1943). Mathematical exactitude is not required under such circumstances. United States v. Johnson, supra.
Accordingly, petitioner's objection to the testimony offered by respondent's witness McMullan cannot be sustained. McMullan testified as to statements made to him by Americo Altamirano, named but not indicted as a co-conspirator in petitioner's criminal case, such statements forming part of the basis upon which respondent's determination of unreported income was made. It was clear that the testimony was offered solely for the purpose of showing respondent's method of determining petitioner's income, and not for the truth of the statements themselves. The evidence produced by respondent at trial showed that respondent had clear indications that: (a) petitioner was engaged as a "middle-man" in arranging the delivery to wholesalers of narcotics brought into the United States; (b) petitioner had been involved in this activity in 1971 to the extent of 200 kilos of heroin, for which he was compensated at the rate of $ 2,000 per kilo; (c) petitioner *393 had a Swiss bank account into which almost $ 105,000 had been deposited in 1971; (d) there was cash of some $ 87,000 in a safe deposit box belonging to petitioner's wife, as to which she disclaimed knowledge; (e) when arrested, petitioner had $ 5,000 on his person; -- all of which happened during a period when petitioner had no other known source of employment, and during the same year for which petitioner was convicted of conspiracy to import heroin. With this information in hand, we are not prepared to say that respondent acted arbitrarily in determining petitioner's unreported income from handling illegal narcotics, a business which, as we noted in Llorente, is one not noted for its non-profit purposes. [15]
Petitioner argues that the issuance of numerous documents by the respondent prior to the mailing of the final notice of deficiency indicates the arbitrary and excessive nature of the respondent's determination. The fact that respondent issued an assessment for the period ending December 9, 1971, a 30-day letter and (through clerical error) *394 a proposed draft of the statutory notice of deficiency is irrelevant and has no bearing on the ultimate resolution of the issue before us. Earlier preliminary computations and proposed adjustments to income do not constitute a final determination by respondent [16] and are irrelevant when respondent's final statutory notice is issued. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). That, and only that, is the determination which gives this Court jurisdiction. [17] Even alternative or inconsistent determinations by respondent do not rob them of of this presumptive correctness. Meyer v. Commissioner, 46 T.C. 65, 82 (1966). We have found that respondent's statutory notice was not arbitrary and capricious, and we accordingly hold that it is entitled to its usual presumption of correctness, thus placing the burden *395 of proof on petitioner to show the extent, if any, to which respondent's statutory notice is in error, as in the usual case which comes before us. [18]
II We now consider what petitioner did in this case to discharge his burden of proof. All he did was to testify that he had no reportable income in 1971 for income tax purposes, that he was not in the drug business, and that he was living solely on his wife's earnings. He made no further attempt to show that respondent's determinations were erroneous in any respect, nor to explain the large amounts of cash in his possession or under his control. It can only be assumed that if there was information in petitioner's possession that could have explained these large sums of money, he would have submitted this information at trial. The failure of petitioner to introduce evidence within his control on this important subject gives rise to an *396 inference, that, if produced, this evidence would have been unfavorable to petitioner's position before the Court. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946). This is especially true where the party failing to produce the evidence has the burden of proof. Wichita Terminal Elevator Co. v. Commissioner, supra.If respondent's adjustments to petitioner's income were inaccurate due to the unavailability or non-existence of petitioner's records, it was the result of petitioner's own course of conduct. Figueiredo v. Commissioner, 54 T.C. 1508, 1513 (1970), affd. per curiam, 73-2 U.S.T.C. 9713 (9th Cir. 1973). Nor will a petitioner necessarily carry his burden of proof by his unsupported testimony that he owes no tax or that his returns as filed were correct. We are not required to accept petitioner's testimony as Gospel. Gerardo v. Commissioner, supra.To so hold would destroy the presumptive correctness of respondent's statutory notice whenever a petitioner makes such a statement on the witness stand. Petitioner must do more than that. Halle v. Commissioner, 7 T.C. 245, 247 (1946), *397 affd. 175 F.2d 500 (2d Cir. 1949), cert. denied 338 U.S. 949. We accordingly hold that petitioner has failed to carry his burden of proof to show that respondent's determination of a deficiency in petitioner's tax for 1971 was erroneous. III Finally, this Court must decide whether petitioner is liable for additions to tax under sections 6651(a), 6653(a) and 6654(a) in the amounts of $ 66,269.38, $ 13,253.88, and $ 8,482.48, respectively. The burden of proof is upon the petitioner. Welch v. Helvering, 290 U.S. 111 (1933); Enoch v. Commissioner, 57 T.C. 781, 802 (1972); Wangrud v. Commissioner, T.C. Memo 1980-162. Petitioner has failed to present any evidence with respect to the additions to tax under any of these sections, except for the allegation that since the determination itself was arbitrary, the additions to tax must also have been arbitrarily determined. Therefore, petitioner has failed to carry his burden of proof, and we find for the respondent on these three issues. The record herein shows that a tax of $ 92,034.90 for 1971 was determined and assessed against petitioner about *398 February 2, 1972. On February 3, 1972, respondent served a Notice of Levy on the Bureau of Customs for this amount, plus fees and statutory additions. Petitioner, however, was given no credit for this amount in respondent's statutory notice subsequently issued, and the record before us does not disclose whether the funds levied upon were paid over to respondent by the Bureau of Customs for credit to petitioner's account. Even if such funds had been collected by respondent prior to the issuance of the statutory notice herein, however, they would not be creditable to petitioner in the computation of deficiency in the statutory notice, section 6211(b)(1). We do not imply that they would not be creditable to petitioner as part of respondent's collection process. Decision will be entered for the respondent. Footnotes
*. This case was tried before Judge Cynthia Holcomb Hall, who subsequently resigned from the Court. By order of the Chief Judge,the case was reassigned to Judge Jules G. Korner III. ↩
1. All statutory references are to the Internal Revenue Code of 1954, in effect during the years in issue.↩
2. Neither party attached any reservation or qualification to any of the joint exhibits submitted into evidence.↩
3. The fact of petitioner's indictment and conviction, and the basis thereof, is also shown in this record by joint exhibits of the parties, and a separate exhibit of petitioner's.↩
4. According to McMullan's testimony, Altamirano provided information implicating petitioner both before and after his own trial and conviction.↩
5. The courts have not always been precise in interpreting Helvering v. Taylor, supra, on the question whether, once the Commissioner's determination has been shown to be without foundation (i.e., arbitrary and capricious), the whole burden of proof shifts to the Commissioner, or merely the burden of going forward with the evidence. Since, as we have concluded, respondent's statutory notice herein was based upon substantial evidence linking petitioner to the narcotics business, and was therefore not arbitrary and capricious, we do not have to confront the troublesome question in this case. We note, however, that recent expressions of this Court show that it is our view that in the Helvering v. Taylor situation, it is only the burden of going forward with the evidence which shifts to the Commissioner, and not the entire burden of proof. On this point, at least, both the majority opinion and the dissenting opinions in Llorente v. Commissioner, 74 T.C. 260 (1980), revd. 649 F.2d 152 (2d Cir. 1981), in this Court were in agreement. See 74 T.C. 260, 264, 280. Note also the extended discussion of the question in the concurring opinion of Tannenwald, J., in Llorente, 74 T.C. at 272, and the fact that the Court of Appeals for the Second Circuit, in reversing us in Llorente, 649 F.2d 152 (2d Cir. 1981), specifically declined (in footnote 4 of that opinion) to decide the question, as did the Court of Appeals for the Ninth Circuit in Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979). Our view herein is also consistent with our position in Jackson v. Commissioner, 73 T.C. 394, 401 (1979), and Suarez v. Commissioner, 58 T.C. 792 (1972), 61 T.C. 841↩ (1974), (appeal dismissed 5th Cir. 1974).
6. So far the cases decided in the Circuit Courts of Appeals have all involved asserted criminal activity. In the circumstances of this case we do not reach the issue of whether the exception has a broader application.↩
7. Jackson v. Commissioner, 73 T.C. 394, 403↩ (1979). 8. Weimerskirch v. Commissioner, 596 F.2d 358, 361 (9th Cir. 1979), revg. 67 T.C. 672↩.
9. Llorente v. Commissioner, 649 F.2d 152, 156-7 (2d Cir. 1981), revg. in part and affg. in part 74 T.C. 260↩ (1980). 10. Llorente v. Commissioner, 649 F.2d at 157↩. 11. Llorente v. Commissioner, 649 F.2d at 156-7↩. 12. Llorente v. Commissioner, 649 F.2d at 157↩.
13. Compare also Gerardo v. Commissioner, 552 F.2d 549 (3d Cir. 1977); Carson v. United States, 560 F.2d 693 (5th Cir. 1977). We leave to another day the question of whether or to what extent, we will accept the views of the Circuit Courts of Appeals in these two cases or in Weimerskirch or Llorente↩.
14. The above statement should not be construed as implying the position of this Court on the question of whether the exclusionary rule is applicable to cases before this Court involving illegally seized evidence. Proesel v. Commissioner73 T.C. 600 (1979); Guzzetta v. Commissioner, 78 T.C. 173 (1982). This question is not before us, and is the only question on which we announced in Guzzetta that we would no longer follow Suarez↩.
15. Llorente v. Commissioner, 74 T.C. 260, 266 (1980), revd. 649 F.2d 152↩ (2d Cir. 1981).
16. Frost Superior Fence Co. v. Commissioner, 1 B.T.A. 1096 (1925); Fidelity Insurance Agency v. Commissioner, 1 B.T.A. 86↩ (1924). 17. Mohawk Glove Corp. v. Commissioner, 2 B.T.A. 1247 (1925); Roy Nichols v. Commissioner, 14 B.T.A. 1347↩ (1929).
18. There are no issues herein upon which respondent has the burden of proof, such as fraud or new matters pleaded in his answer. Section 7454; Rule 142, Tax Court Rules of Practice and Procedure.↩