MICHAEL AND CAROLE H. FRIEDMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Friedman v. Commissioner
Docket No. 1820-78.
United States Tax Court
T.C. Memo 1982-178; 1982 Tax Ct. Memo LEXIS 569; 43 T.C.M. (CCH) 1009; T.C.M. (RIA) 82178; April 7, 1982. Michael Friedman, pro se. Daniel K. O'Brien, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge Francis J. Cantrel pursuant to the provisions of section 7456(c), Internal Revenue Code of 1954, as amended, [1] and General Order No. 6 of this Court, 69 T.C. XV. [2] After a review of the record, we agree with and adopt his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: Respondent determined deficiencies in petitioner's Federal income tax for the years 1972 and 1973 in the amounts of $ 1,038 *571 and $ 4,608, respectively. Concessions having been made by petitioners, the issues remaining for decision are whether the house petitioners sold in 1973 was their principal residence so that the sale thereof qualifies for non-recognition of gain treatment under section 1034 and whether certain expenditures in 1972 and 1973 for club dues and expenses and a trip are deductible as ordinary and necessary business expenses under sections 162 and 274 and whether telephone expenses are deductible under section 162. FINDINGS OF FACT Some of the facts have been stipulated by the parties. The stipulation of facts and attached exhibits and the supplemental stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided at 1744 Bay Boulevard, Atlantic Beach, New York on the date they filed their petition. Petitioners filed joint Federal income tax returns for the years 1972 and 1973 with the Internal Revenue Service Center at Holtsville, New York. [3]
Petitioner is an attorney and a stockbroker who in 1972 and 1973 was the *572 managing partner in Steindecker, Friedman & Co., a stock brokerage partnership located at New York City, New York. There was an agreement among the partners that expenses for travel and entertainment would be paid by the firm only if there was an imminent possibility of an order, otherwise the partner would be responsible for the expenses if he thought there was a possibility of a future account or order. Petitioners, on their 1972 return claimed Miscellaneous deductions for the following items in amounts as follows: Unreimbursed business expenses,
(1) Travel to see client
* $ 1,055
(2) Entertainment
5,468
(3) Parking
* 175
(4) Expenses, re: Art Show (claimed as
an itemized Miscellaneous deduction)
* 370
$ 7,068
The unreimbursed business expense of $ 5,468 was broken down by petitioners on their 1972 return as follows: (1) Total payments - Yale University Club
$ 207.42
(2) Sixty percent of total payments,
Inwood Country Club
4,516.20
(3) Total annual phone bill payments to
one of two phones maintained at
910 5th Avenue and to one of two
phones maintained at 1960 Bay
Boulevard, Atlantic Beach, New York
629.00
(4) Lunches
* 100.00
(5) Undesignated
* 15.00
[4] $ 5,467.62
*573 Petitioners, on their 1973 return claimed Miscellaneous deductions for the following items in amounts as follows: Unreimbursed business expenses
(1) Travel to see clients
$ 630
(2) Business Telephone
562
(3) Parking and Tolls
** 155
(4) Entertainment and Clubs
3,386
$ 4,733
The unreimbursed business expense of $ 3,386 was broken down by petitioners on their 1973 returns as follows: (1) Sixty percent of total payments,
Athletic Club
** $ 700
(2) Total payments - Yale University Club
405
(3) Sixty percent of total payments,
Inwood Country Club
2,081
(4) Undesignated
** 200
$ 3,386
Petitioner was a member of the Yale University Club (Yale Club) in 1972 and 1973. His sole purpose for being a member was that his office was downtown and he wanted a place uptown where he could meet clients in a comfortable *574 setting before going out to entertain them. He did not use those facilities for his own personal enjoyment in 1972 and 1973 nor did he entertain clients there. His claimed deductions of $ 207.42 and $ 405.00 represent charges for dues only. [5] Neither the bills reflecting those charges nor any documentary evidence reflecting the payment thereof were submitted. Petitioner maintained no diary reflecting any business use of the Yale Club in either 1972 or 1973. Respondent has disallowed these claimed deductions. Petitioners and their oldest daughter, Debra, were members of Inwood Country Club (Inwood) during 1972 and 1973. Inwood had a golf course and tennis courts but no swimming pool. Annual membership dues were $ 1,500, 90 percent of which was attributable to petitioner. Petitioner was charged $ 1,500 in dues in each of the 2 years and was billed for $ 6,027.05 and $ 1,968.85 in 1972 and 1973 respectively, for other charges. Petitioners deducted 60 percent of the total dues and other charges each year as an unreimbursed business expense. Inwood was used by petitioner *575 for both business and personal pleasure. His wife and Debra also used Inwood for personal reasons. In 1972 petitioner was at Inwood on 20 occasions to entertain business guests and on 9 occasions for his personal use. In 1973 he was at Inwood on 22 occasions to entertain business guests and on 14 occasions for his personal use. His wife used Inwood for non-business purposes about 20-25 times a year and Debra used Inwood about 5 times a year for personal pleasure. Petitioner kept a contemporaneous diary of who he met at Inwood and on what date. He did not record in that diary the charges attributable to each visit nor the business purpose of that visit. Monthly bills were sent to petitioners for those charges. Neither the bills nor any documentary proof of payment were submitted.A summary of the diary entries was submitted but it does not disclose the charges attributable to each visit nor the business purpose of that visit. Respondent disallowed the claimed Inwood deductions. Petitioner in February 1973 took a business trip to Paris, France. The cost of the trip was $ 906.80 of which his stock brokerage firm paid $ 430. Petitioner deducted $ 630 on his 1973 Federal income *576 tax return. [6] Petitioner met Mr. William Mathon, an officer of the Algemene Bank in Paris in an attempt to open an account with petitioner's firm. Thereafter, petitioner's firm did obtain some orders from the bank. No documents were submitted to show separate expenditures for transportation, lodging or meals and no documents showing dates of departure and return, destination and business purpose were submitted. Respondent disallowed the claimed travel deduction. Petitioners resided at two residences during 1972 and 1973. One was a 8-room apartment (hereinafter sometimes called apartment) located at 910 Fifth Avenue, New York, New York.The other, was an 8-room house situate at 1960 Bay Boulevard, Atlantic Beach, New York (Atlantic Beach residence). In both the apartment and the Atlantic Beach residence they maintained two telephones. On their 1972 return they deducted $ 629, the total bills for one phone in each residence, as a business expense. On their 1973 return they deducted $ 562, the total bills for one phone in each residence, as a business *577 expense. Respondent, without any proof that any of the phones were used for business, allowed 25 percent of the total bills for the four phones in each year. [7] Neither the phone bills nor any documentary proof evidencing their payment were submitted. Petitioners constructed the Atlantic Beach residence in 1963 on land which they had acquired. They sold this residence in November 1973 for a gross sales price of $ 74,000, in which they had an adjusted basis of $ 61,217. [8] The contract for the sale of this residence dated September 12, 1973, executed by petitioners, as sellers, and Robert P. Beck and Naomi Beck, as purchasers, states petitioner's residence to be "910 Fifth Avenue, New York, New York." The contract contains the following statement at the top of page 1 -- "Consult your lawyer before signing this instrument - This instrument should be used by lawyers only." Within 12 months from the date the Atlantic Beach residence was sold petitioners purchased another residence at 1744 Bay Boulevard, Atlantic Beach, New York (1744 Bay Boulevard) for $ 102,500. *578 On their 1972 return, which was filed around April 15, 1973, and in which they claim a refund of $ 2,307, petitioners stated that their present home address was "910 Fifth Avenue, New York, New York." On line 33 of that return they reported that the location of their principal residence at the end of the year (1972) to be "New York, New York, NYC." A copy of a Form W-2, Wage and Tax Statement, issued to petitioner by Padar Realty Co., Inc., which is attached to the 1972 return, lists petitioner's address as "910 5th Ave., N.Y., N.Y." On their 1973 return, petitioners reported their present home address to be "910 Fifth Avenue, New York, New York" and the county of their residence to be "N.Y." The Atlantic Beach residence is situate in Nassau County, New York. On Statements of Gains and Losses attached to that return petitioners report their address to be "910 Fifth Avenue, New York, New York." On a Form 870-1, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax, executed by petitioners on September 15, 1975, and in which petitioners consented to an increase in tax for 1973 and 1974, their address is stated as "910 Fifth Avenue, New York, N.Y." From 1970 *579 through approximately mid-1975 petitioners rented the apartment. During 1972 and 1973 the rent was $ 1,105 per month. In May 1975 petitioners subleased the apartment, and from that date, took up permanent year-round residence at 1744 Bay Boulevard. The building in which the apartment was located was later converted into a cooperative. Petitioners purchased the apartment in 1978 and subsequently sold it. Petitioners resided at the apartment during the school year and lived at the Atlantic Beach residence during June, July, August, parts of May and September and on alternate weekends and school holidays during 1972 and 1973. [9]
Petitioner's office was in New York City during 1972 and 1973. In each year petitioner maintained a home office at the apartment, but none at the Atlantic Beach residence. On their 1972 and 1973 returns petitioners claimed a home office deduction of $ 1,658. [10] Respondent has allowed these deductions. *580 Petitioners have three children, Debra, mentioned before, who was born on May 25, 1961; Lisa, who was born on May 7, 1963; and, Jonathan, who was born on April 11, 1965. The Dalton School, which was attended by the daughters in 1972 and 1973, was approximately 1 mile from the apartment. Jonathan was a student during 1972 and 1973 at the Horace Mann Bernard Elementary School, which was located in New York City. All of the children's tuition bills were sent to the apartment and both schools listed the children's residence on their records during 1972 and 1973 as "910 5th Avenue, N.Y., N.Y." The schools were about 20 miles from the Atlantic Beach residence. Petitioner's automobiles were registered at Atlantic Beach, but insurance rates were also lower there. The telephone charges for the 2 years show little or no activity at the Atlantic Beach residence during the winter months, some use in April and May, heavy use in June, July and August which slacked off in the fall. The use of the telephones in the apartment was complementary except that use was still relatively high in April and May. Inwood was approximately 3 miles from the Atlantic Beach residence. Petitioners have *581 been members of a synagogue in Atlantic Beach for 17 years but they have also been members of the Fifth Avenue Synagogue, which was near the apartment. An audit of the partnership returns for the fiscal year ending April 30, 1972 and April 30, 1973 resulted in a single adjustment attributable to the disallowance of two-sevenths of claimed partnership auto expense. As a result of this disallowance, petitioners concede that they earned additional income from the partnership in the amounts of $ 1,891 (1972) and $ 1,771 [11] (1973). OPINION
At the outset we think it necessary to comment briefly on one matter persistently stressed at trial and on brief by petitioner in that he was subjected to extensive audits prior to the issuance of the notice of deficiency pertaining to his 1972 and 1973 returns, which resulted in respondent's disallowance of the items at dispute herein. As a general rule, this Court will not look behind a notice of deficiency to examine the evidence used or the propriety of the Commissioner's *582 motives or administrative policy or procedure in making the determination. Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974). The rationale for this rule is that since a trial before the Tax Court is a proceeding de novo, our determination of a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level. Jackson v. Commissioner,73 T.C. 394, 400 (1979). Deductions are a matter of legislative grace and the taxpayer has the burden of establishing that he is entitled to them. Deputy v. Dupont,308 U.S. 488 (1940). The Commissioner's determination is presumptively correct and the taxpayer has the burden of proof, i.e., of overcoming that presumption. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. However, the deductibility of business-related entertainment and travel expenses is limited under section 274 to items directly related *583 to and associated with the active conduct of the taxpayer's trade or business. Section 274(d) requires those items be substantiated by adequate records or by sufficient evidence to corroborate the taxpayer's statements as to amount, time and place, business purpose, and business relationship of the persons entertained. Club dues and fees to social, athletic and sporting facilities are treated as entertainment facility expenses. Section 274(a)(2). Club dues and expenses are deductible only if the taxpayer establishes "(i) That the facility was used primarily for furtherance of the taxpayer's trade or business and (ii) That the expenditure was directly related to the active conduct of such trade or business. Such deduction shall not exceed the portion of the expenditure directly related to the active conduct of the taxpayer's trade or business." Section 1.274-2 (a)(2), Income Tax Regs.
Petitioner did not use the Yale Club during 1972 or 1973 for his own use or to meet clients. Moreover, he kept no records regarding the uses of that facility. Clearly petitioner's unsupported testimony does not meet the strict requirements of section 274. As to the dues for use of Inwood, *584 petitioner must first establish that the facility "was used primarily for the furtherance of his trade or business." By petitioner's own testimony more than 50 percent of the use of the club each year was for the pleasure of himself and his family.Therefore, petitioners are not entitled to a deduction under sections 162 and 274 for dues to the Inwood Country Club as a business expense. Mathews v. Commissioner,61 T.C. 12 (1973), revd. on another ground 520 F.2d 323 (5th Cir. 1975). In regard to the charges incurred for each visit, petitioner was unable to show what charges were incurred for each visit. Petitioner maintained that such information was unavailable, since only monthly bills were sent. However, the monthly bills were not introduced; only a summary of petitioner's diary stating the date of the visit and with whom is in evidence. Again, petitioner has failed to comply with the requirements of section 274. "* * * Section 274(d) contemplates that no deduction shall be allowed a taxpayer for such expenditures on the basis of such approximations [as used in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930)], or unsupported *585 testimony of the taxpayer." Section 1.274-5(a), Income Tax Regs. See also Andress v. Commissioner,51 T.C. 863 (1969), affd. 423 F.2d 679 (5th Cir. 1970). For traveling expenses, the substantiation requirements of section 274(d) require listing the amount of each separate expenditure for transportation, lodging, meals, etc. Section 1.274-5(b)(2), Income Tax Regs. The dates of departure and return, destination and business purpose of the trip must be documented. Petitioner has satisfied none of those requirements and thus his claimed deduction for travel cannot be allowed. Petitioner is not required to comply with section 274 in seeking the telephone expense deduction. Respondent allowed 25 percent of the total telephone bills. Here, petitioner's unsupported testimony is inadequate to overcome the presumption that the Commissioner's determination is correct. Welch v. Helvering,supra.
Section 1034(a) allows the nonrecognition of gain on the sale of the taxpayer's principal residence if a new principal residence is purchased within the period 12 months before or up to 12 months after the sale of the old principal residence. *586 The gain on the sale of the old principal residence is not recognized if the cost of the new residence exceeds the adjusted sales price of the old residence as defined by section 1034(b). Respondent agrees that all requirements of section 1034 have been met with the sale of the Atlantic Beach residence except that such residence was not petitioner's principal residence. Petitioner asserts that they lived in Atlantic Beach more than one-half the year and they've always intended to make their home at Atlantic Beach their only residence. However, petitioner, by his own testimony, admits that they lived in the apartment during the school year and they continued to do so until 1975 when the apartment was rented and the children were old enough to commute the 20 miles to school each day. The evidence in the record overwhelmingly supports our conclusion that petitioner's principal residence in 1973 was their apartment at 910 Fifth Avenue, New York. The children's school year was 9 months and the phone usage during that period reflects their residence at the apartment. The apartment had a home office and all correspondence in the record shows that the 910 Fifth Avenue address was used *587 as their principal residence. As we said in Stolk v. Commissioner,40 T.C. 345, 355 (1963), affd. 326 F.2d 760 (2d Cir. 1964), "The phrase 'used by the taxpayer as his principal residence' means habitual use of the old residence as the principal residence. The antithesis is nonuse of property as the principal residence." [12]
Petitioners have not shown that their Atlantic Beach residence was used more frequently than a summer home and weekend retreat, thus we find for respondent.
Decision will be entered for the Respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise indicated. ↩
2. Pursuant to General Order No. 6, dated March 8, 1978, the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to this case.
3. Since Carole H. Friedman did not appear at trial, Michael Friedman will be referred to herein as petitioner.↩
*. The items noted by asterisks, above, were conceded by petitioner at trial.↩
*. The items noted by asterisks, above, were conceded by petitioner at trial. ↩
4. This amount was rounded off to $ 5,468 in the return.↩
**. The items noted by double-asterisks, above, were conceded by petitioner at trial.↩
**. The items noted by double-asterisks, above, were conceded by petitioner at trial.↩
5. There is nothing in this record to show that he ever met any clients at the Yale Club in 1972 or 1973.↩
6. $ 906.80 minus $ 430 equals $ 476.80. There is no explanation in the record as to why petitioners took a $ 630 deduction.↩
7. Thus, respondent disallowed $ 350 in 1972 and $ 271 in 1973 for telephone expenses.↩
8. Petitioners originally claimed an adjusted basis in this residence of $ 70,000 on their 1973 return but they concede that the adjusted basis of that property is $ 61,217, as determined by respondent in his notice of deficiency.↩
9. Petitioner's testimony varied at times with respect to living at the Atlantic Beach residence from June through August and from April through October. We believe it was the former and have so found.↩
10. Which was computed as follows -- $ 1,105 (monthly rent) times 12 (months) divided by 8 (no. rooms in apartment) equals $ 1,658.↩
11. The tax on this adjustment was paid by petitioners on May 31, 1976 and respondent has given them credit for that payment in his determination of the 1973 deficiency.↩
12. See also, McDowell v. Commissioner,T.C. Memo. 1980-160 and Evans v. Commissioner,T.C. Memo. 1962-61↩.